94 F.3d 813
 65 USLW 2195
 Nancy PIERPOINT, Frederick Townsend, Administrator of the
Estates of Geoffrey Pierpoint and Lauren Pierpoint; Dolores
Willis, Administratrix of the Estate of Stacey Bjorkander
and as Guardian Ad Litem of the Estates of Katie Bosko and
Sara Bosko, Plaintiffs-Appellees,
v.
Brian A. BARNES, Administrator of the Estate of David L.
Pierpoint, Defendant-Appellant.
 No. 925, Docket 95-7736.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 25, 1996.
Decided Sept. 5, 1996.
 
 Stephen E. Arnold, Hartford, CT, (Jack G. Steigelfest, Matthew D. Gilmond, Howard, Kohn, Sprague & Fitzgerald, Hartford, CT, of counsel), for Defendant-Appellant.
 Stephen Jacques, Cheshire, CT (Garrett M. Moore, Gregory E. O'Brien, Moore & O'Brien, Cheshire, CT, of counsel), for Plaintiffs-Appellees.
 Before: JACOBS, LEVAL and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Plaintiffs represent the estates and dependents of three individuals who were killed when the private airplane in which they were flying went down thirty-seven miles off the New Jersey shore. They filed suit in Connecticut state court. Defendant removed the case to federal court on the grounds that plaintiffs' claim arose under a law of the United States, namely the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 761 et seq. Plaintiffs timely moved to remand the case to state court. This motion was granted by the district court on the ground that DOHSA cases are not removable. Pierpoint v. Barnes, 892 F.Supp. 60 (D.Conn.1995) (Peter C. Dorsey, Chief Judge ). Defendant appeals this holding. We decline to entertain his appeal, since we have no jurisdiction to review the remand order under 28 U.S.C. § 1447(d).
 
 I. BACKGROUND
 
 2
 On August 14, 1994, David Pierpoint, Geoffrey Pierpoint, Lauren Pierpoint and Stacey Bjorkander were killed when the plane in which they were travelling crashed into the ocean 37 miles southeast of Sea Isle City, New Jersey. The airplane was owned and piloted by David Pierpoint. Representing the estates of Geoffrey Pierpoint, Lauren Pierpoint and Stacey Bjorkander, and their descendants, plaintiffs filed suit in Connecticut Superior Court seeking damages from the estate of David Pierpoint.
 
 
 3
 Defendant removed the case to federal court on March 31, 1995. Plaintiffs successfully moved to remand the case claiming, inter alia, that DOHSA cases are not removable. The district court agreed with plaintiffs, holding:
 
 
 4
 Cases ... which arise under admiralty laws are not removable.... [C]oncurrent state jurisdiction over admiralty cases contradicts removability....
 
 
 5
 DOHSA cases arise exclusively in admiralty....
 
 
 6
 The present case arises under DOHSA and not, therefore, under the "Constitution, treaties or laws of the United States" for the purposes of 28 U.S.C. § 1441(b). Since there is no diversity of parties, the district court may not exercise jurisdiction under 1441(b) and remand is necessary.
 
 
 7
 Pierpoint, 892 F.Supp. at 61. The district court declined to certify this issue for interlocutory appeal. Nevertheless, defendant appeals the district court's remand order, claiming that it was based on an "erroneous interpretation of federal substantive law."
 
 
 8
 We find that we do not have jurisdiction to review this remand order under 28 U.S.C. § 1447(d). Thus, we dismiss the appeal for lack of appellate jurisdiction.
 
 II. DISCUSSION
 
 9
 This case presents at least one, and potentially two, extremely complicated issues of first impression in this Circuit. First, when are district court remand decisions appealable to the Court of Appeals? Second, if we have jurisdiction to review the remand order in this case, did the district court correctly conclude that DOHSA cases arise exclusively in admiralty and are therefore not removable from state to federal court? We find that we do not have jurisdiction to review this remand decision, thus, we do not reach the second question.
 
 A. The Appealability of Remand Orders
 
 10
 To understand this question of appellate jurisdiction, one must be familiar with both the text of the remand statute, and the gloss the Supreme Court has put on it. The statute provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...." 28 U.S.C. § 1447(d). Despite the broad language of the statute, it is "not dispositive of the reviewability of remand orders in and of itself." Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 345, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976). In Thermtron, the Supreme Court held that § 1447(d) must be "construed together" with § 1447(c).
 
 
 11
 Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), whether or not that order might be deemed erroneous by an appellate court. But we are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute.
 
 
 12
 Id. at 351, 96 S.Ct. at 593 (emphasis added).
 
 
 13
 When Thermtron was decided, § 1447(c) provided that a district court "shall" remand a case "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction...." Id. at 342, 96 S.Ct. at 589. The Court held that a district court's order remanding a case due to the overcrowding of its docket was not within the scope of § 1447(c), and was therefore reviewable in spite of the language of § 1447(d). Id. at 351, 96 S.Ct. at 593.
 
 
 14
 After the decision in Thermtron, in 1988, Congress amended the language of § 1447(c) to read in pertinent part:
 
 
 15
 A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
 
 
 16
 28 U.S.C. § 1447(c). This court has recognized that the Thermtron holding should be read to encompass the 1988 amendment. LaFarge Coppee v. Venezolana De Cementos, S.A.C.A., C.A., 31 F.3d 70, 71-72 (2d Cir.1994); Hamilton v. Aetna Life and Casualty Co., 5 F.3d 642, 644 (2d Cir.1993) (per curiam), cert. denied, 510 U.S. 1130, 114 S.Ct. 1100, 127 L.Ed.2d 413 (1994). Thus, appellate review is now prohibited if remand was granted pursuant to a timely motion based on any defect in the removal procedure, or because the district court determined that it lacked subject matter jurisdiction. See Hamilton, 5 F.3d at 644.
 
 
 17
 Accordingly, reviewability of the remand order depends on the district court's basis for granting it. Relying on the last paragraph of the order, in which the district court stated that "[t]he present case arises under DOHSA and not, therefore, under the 'Constitution, treaties or laws of the United States' for the purposes of 28 U.S.C. § 1441(b)", appellees argue that the court was dismissing for lack of subject matter jurisdiction, depriving this court of appellate jurisdiction under § 1447(d) and Thermtron.
 
 
 18
 In isolation, the above-quoted excerpt from the district court's order seems to support appellees' contention that the order was based on a perceived lack of subject matter jurisdiction over DOHSA. However, it is hard to believe that the court would question federal subject matter jurisdiction over DOHSA, since the statute explicitly grants original subject matter jurisdiction to the federal courts. 46 U.S.C. § 761. Instead, the court's holding likely rested on its conclusion that DOHSA claims "arise exclusively in admiralty" and therefore are not removable.[1]
 
 
 19
 Admiralty excepts a class of cases from the general rule that cases which could originally have been filed in federal court are removable to federal court at the option of the defendant. Common law maritime cases filed in state court are not removable to federal court, due to 28 U.S.C. § 1333' § "saving to suitors" clause. Dating back to the Judiciary Act of 1789, this clause preserves a plaintiff's right to a state court forum in cases arising under the common law of the sea. Romero v. International Terminal Operating Co., 358 U.S. 354, 363, 79 S.Ct. 468, 475, 3 L.Ed.2d 368 (1959); 14 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3673 (1985). Since federal and state courts have concurrent jurisdiction over DOHSA, the district court concluded that DOHSA cases are not removable.[2] See Pierpoint, 892 F.Supp. at 61 (stating that "concurrent state jurisdiction over admiralty cases contradicts removability").
 
 
 20
 The district court remanded the case because of the special treatment accorded admiralty cases, not because of a perceived lack of subject matter jurisdiction. As a result, this court may not review the remand order if it was granted pursuant to a timely motion asserting a "defect in removal procedure." Plaintiffs' motion to remand was timely, having been filed within the proscribed thirty day period. Thus, the meaning of the phrase "defect in removal procedure" is at issue. Specifically, we must determine whether the perceived nonremovability of DOHSA cases comes under the ambit of a "defect in removal procedure."
 
 
 21
 There are two conflicting ways to read this language. Appellant argues that this court should confine its reading of "defect in removal procedure" to mistakes by the parties regarding the timing, form or content of the removal. He claims that this reading is consistent with the plain language of the statute, given the legislature's selection of the term of art "procedure." On the other hand, one can interpret "defect in removal procedure" more broadly to include all removals that are not authorized by law. Under this interpretation, the removal of a case which is non-removable would fall within the rubric of "defect in removal procedure." See In re Medscope Marine Ltd., 972 F.2d 107, 110 (5th Cir.1992); Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1545 (5th Cir.1991) ("[W]hen section 1447(c) speaks of 'any defect in removal procedure,' it includes within its reach the bringing of an action not within the court's removal jurisdiction but that could have been brought originally in that court."); 1A J. Moore & B. Ringle, Moore's Federal Practice p 0.168 [4.-1], at 644 (2d ed. 1989)("The motion to remand must be made within 30 days after removal, if the objections are of a character that can be waived, such as ... matters pertaining to the procedure for removal or the non-removability of a proceeding otherwise within federal jurisdiction." (footnotes omitted)). The language of the statute is susceptible to either interpretation. Therefore, our task is to divine what Congress intended by the use of the language "defect in removal procedure." See, e.g., Malley v. Briggs, 475 U.S. 335, 342, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (noting that "our role is to interpret the intent of Congress in enacting § 1983"); Garcia v. United States, 469 U.S. 70, 79, 105 S.Ct. 479, 484, 83 L.Ed.2d 472 (1984) ("It is our responsibility to interpret the intent of Congress"); Southern Railway Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 454, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979) (holding that "the ultimate analysis is always one of Congress' intent").
 
 
 22
 Consideration of Congress' purpose in enacting § 1447(c) provides some insight into its intended meaning. Congress placed a strict time limit on motions to remand in order to prevent the delay, inefficiency, and unfairness resulting from late-stage, forum-shopping remand motions. There is no reason that Congress' concern with unfairness and inefficiency would be confined to remand motions based on procedural grounds. This leads us toward the conclusion that Congress intended the phrase "defect in removal procedure" to be interpreted broadly in order to subject a wide range of remand motions to the 30-day limit.
 
 
 23
 The legislative history strongly supports this conclusion. Although judicial inquiry into the meaning of a statute ends when the words of a statute are clear and unambiguous, see Wetzler v. FDIC, 38 F.3d 69, 73 (2d Cir.1994), where, as here, a congressional enactment is subject to more than one reading, legislative history may be used to shed light on the unclear language. See Toibb v. Radloff, 501 U.S. 157, 162, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) ("Where ... the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.") (internal quotations omitted); United States v. Plaza Health Laboratories, Inc., 3 F.3d 643, 646 (2d Cir.1993), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994); Waters v. Commissioner, 978 F.2d 1310, 1316 (2d Cir.1992), cert. denied, 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993). A committee report, representing a collective statement by the drafters about the intended purpose of proposed legislation, is considered a particularly good indicator of congressional intent when it is otherwise difficult to ascertain. William N. Eskridge & Philip P. Frickey, Legislation: Statutes and the Creation of Public Policy 743 (2d ed. 1995) ("Most judges and scholars agree that committee reports should be considered as authoritative legislative history and should be given great weight."); Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 395, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (Jackson, J., concurring) (objecting to the use of legislative history to interpret statutes, but excepting committee reports from his quarrel because they "presumably are well considered and carefully prepared").
 
 
 24
 Section 1447(c) was amended by the Judicial Improvements and Access to Justice Act of 1988, part of a decade-long effort by the House Committee on the Judiciary to "improve the administration of justice in the nation" by addressing problems of overcrowding, delay, and spiraling costs caused by the "torrent of litigation" besetting the federal judiciary. H. Rep. No. 889, 100th Cong., 2d Sess. 1, 23 (1988), reprinted in 1988 U.S.C.C.A.N. 5982, 5983-84. To that end, in addition to the amendment to § 1447(c), the act included, inter alia, reform of the federal rulemaking process, diversity of citizenship jurisdiction, and court-annexed arbitration. Id. at 24-25, 1988 U.S.C.C.A.N. at 5984-85.
 
 
 25
 The amendment to § 1447(c) imposed a 30-day time limit for all motions to remand based on a "defect in removal procedure." Prior to the amendment, § 1447(c) required remand "if at any time before final judgment it appears that the removal was improvident." Id. at 72, 1988 U.S.C.C.A.N. at 6033 (emphasis added). According to the committee report the earlier provision needed revision because:
 
 
 26
 [s]o long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction. There is also some risk that a party who is aware of a defect in removal procedure may hold the defect in reserve as a means of forum shopping if the litigation should take an unfavorable turn. The amendment provides a period of 30 days within which remand must be sought on any ground other than lack of subject matter jurisdiction. The amendment is written in terms of a defect in "removal procedure" in order to avoid any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded.
 
 
 27
 Id. (emphasis added). The purpose of the amendment then, was to avoid late-game forum shopping by plaintiffs by imposing a 30-day limit to ensure that improperly removed matters (excepting those where the court lacks subject matter jurisdiction) would be remanded early in the proceeding or not at all. We therefore conclude that it was the intent of Congress to create a strict time limitation on all challenges to removal based on any impropriety, whether procedural or substantive, in the removal procedure (excepting those based on the district court's lack of subject matter jurisdiction). See In re Medscope Marine Ltd., 972 F.2d 107, 109-10 (5th Cir.1992) (amendment is "reconstitution of existing statute and jurisprudence with the addition of a strict time limitation on the privilege of filing remand motions"). See also 14A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 3739 (Supp.1995) ("Although the statute could have been more clearly drafted, it seems clear that it means that the 30-day limit applies to all motions to remand except in cases in which the court lacks subject matter jurisdiction.") (emphasis added).
 
 
 28
 Moreover, the committee report explains that the use of the term "defect in removal procedure" was not intended, as appellant contends, to confine the applicability of § 1447(c) to mistakes concerning the timing, form and content of removal. Rather, that term was chosen to require filing of remand motions within 30 days of removal in all cases where the remand motion is premised on an asserted defect in the removal. This avoids any implication that the time limit would prevent remand "after disposition of all federal questions leaves only state law questions" which the court believes ought to be remanded. H. Rep. No. 889 at 72, 1988 U.S.C.C.A.N. at 6033.
 
 
 29
 Considering this very broad reading of the "defect in removal procedure" language of § 1447(c) in conjunction with the directive of Thermtron, that § 1447(d) should be read in light of § 1447(c), we conclude that the district court's order remanding this case is not appealable. The district court remanded the case based on a timely remand motion because it determined that cases brought under DOHSA are not removable, and thus, that the removal was not authorized by law. As we have explained, a remand on such a basis falls within the "defect in removal procedure" language of § 1447(c). Thus, § 1447(d) and the Court's holding in Thermtron instruct us that we do not have jurisdiction to consider an appeal from this order.
 
 
 30
 This conclusion is in accord with the " 'strong congressional policy against review of remand orders' [which] underlies [§ ] 1447(d)." Things Remembered, Inc. v. Petrarca, --- U.S. ----, ----, 116 S.Ct. 494, 500, 133 L.Ed.2d 461 (1995)(Ginsburg, J., concurring)(quoting Sykes v. Texas Air Corp., 834 F.2d 488, 490 (5th Cir.1987)).[3] Review of remand orders delays litigation and adds unnecessary expense. A firm policy of declining to review remand orders allows litigants to proceed with the litigation in a timely fashion in state court. See Hernandez v. Brakegate, Ltd., 942 F.2d 1223, 1226 (7th Cir.1991).
 
 
 31
 Our holding is consistent with prior Second Circuit cases considering appellate jurisdiction over remand orders in light of the amendment to § 1447(c).[4] In Hamilton v. Aetna Life and Casualty Co., 5 F.3d 642 (2d Cir.1993) (per curiam), cert. denied, 510 U.S. 1130, 114 S.Ct. 1100, 127 L.Ed.2d 413 (1994), this court held that it had jurisdiction to review a remand order because the order was issued outside the 30 day time limit, and was thus not authorized by § 1447(c). In LaFarge Coppee v. Venezolana De Cementos, S.A.C.A., C.A., 31 F.3d 70 (2d Cir.1994), the court held that it lacked jurisdiction to consider a remand order after concluding that the district court had remanded for a "defect in removal procedure," namely, the untimeliness of the removal under the Federal Arbitration Act. Id. at 72.
 
 
 32
 Our decision does not mean that a remand order can be reviewed only if it was based on an untimely motion. Certain justifications for remand will not fall within the "defect in removal procedure" rubric despite the broad reading accorded that language by the committee report and by this decision. The Supreme Court recently recognized such a justification in Quackenbush v. Allstate Ins. Co., --- U.S. ----, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), in which the Court held that "the District Court's abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure." Id. at ----, 116 S.Ct. at 1718. The district court had decided to abstain from hearing the reinsurance case, brought on behalf of several insolvent insureds, on the grounds that "California has an overriding interest in regulating insurance insolvencies and liquidations in a uniform and orderly manner, ... this important state interest could be undermined by inconsistent rulings from the federal and state courts." Id. at ----, 116 S.Ct. at 1717 (citations and internal quotation marks omitted). Acknowledging that it had removal jurisdiction, the district court did not remand the case because the removal was unlawful, but because the case was better left in state court. Since this consideration does not relate to the lawfulness of the removal itself, the Supreme Court's decision that the remand order was reviewable is entirely consistent with our decision today. See also Minot, 13 F.3d at 592 ("since the District Court invoked abstention doctrines ... to justify its remand, section 1447(d) does not bar appellate review").
 
 
 33
 Similarly, if a district judge today (following the amendment to § 1447(c)) were to remand a case for the same reasons as the district judge in Thermtron, the case would be reviewable under the amended terms of § 1447(c). The Thermtron district judge remanded sua sponte based purely on his overcrowded docket. The Court endorsed appellate review of that decision because the ground for remand was "wholly different from those upon which § 1447(c) permits remand." Id. at 344-46, 96 S.Ct. at 589-90. A remand order based on the district court's scheduling concerns does not in any way relate to a "defect in removal procedure" (or a lack of subject matter jurisdiction). Thus, in spite of the subsequent amendment to § 1447(c), the reasoning of the Thermtron Court is still applicable.
 
 
 34
 Our holding today is also consistent with Things Remembered, Inc. v. Petrarca, --- U.S. ----, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). In that case, the Supreme Court held that the district court's order remanding the case to bankruptcy court on the grounds of untimely removal was not reviewable, regardless of whether removal was based on the bankruptcy removal statute, 28 U.S.C. § 1452(a), or the general removal statute at issue in this case. Id. at ----, 116 S.Ct. at 497. Thus, as it applies to this case, Things Remembered merely confirms that a remand order is not reviewable when it was grounded on untimely removal. This holding is not inconsistent with our determination that the term "defect in removal procedure" encompasses removals that were not authorized by law, since this category naturally includes removals that suffer from a procedural defect.
 
 
 35
 Finally, we take issue with the dissent's assertion that today's decision conflicts with caselaw in five other circuits. We acknowledge that at least two circuits have refrained from considering the language of the committee report to § 1447(c) on the grounds that "defect in removal procedure" is an unambiguous term. See Foster v. Chesapeake Insurance Co., 933 F.2d 1207 (3d Cir.1991); Melahn v. Pennock Insurance Inc., 965 F.2d 1497 (8th Cir.1992) (adopting the holding in Foster ). We disagree with these decisions.
 
 
 36
 However, at least two of the decisions embraced by the dissent are not inconsistent with our decision in this case. For example, as it relates to our holding today, Page v. City of Southfield, 45 F.3d 128, 131 (6th Cir.1995), like Things Remembered, stands for the unremarkable proposition that the phrase "defect in removal procedure" encompasses procedural defects.[5] This is certainly not inconsistent with our determination that the phrase encompasses all removals not authorized by law. Compare In re Continental Casualty Co., 29 F.3d 292 (7th Cir.1994) (also holding that district courts cannot remand cases on their own motion for defects in removal procedure, but noting that "defect in removal procedure" means failure to comply with § 1446). Nor does today's decision conflict with the Ninth Circuit's decision in Northern California District Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034 (9th Cir.1995), in which the court merely ruled that the district court could not remand a case based on a procedural defect raised more than 30 days after the filing of the removal petition.[6]
 
 III. CONCLUSION
 
 37
 The district court remanded Pierpoint to Connecticut state court based on a "defect in removal procedure" under 28 U.S.C. § 1447(c). Section 1447(d) deprives us of jurisdiction to review this order. Thus, the appeal is dismissed.
 
 JACOBS, Circuit Judge, dissenting:
 
 38
 I respectfully dissent from the majority's conclusion that we lack appellate jurisdiction to hear Mr. Barnes's appeal.
 
 
 39
 The majority and I disagree on how to read § 1447(c). The statute provides that remand motions that are based on "any defect in removal procedure" must be made within 30 days, while remand motions asserting lack of subject matter jurisdiction may be made anytime. For convoluted reasons admirably sorted out in the majority opinion, we lack appellate jurisdiction to review the district court's decision in this case if the plaintiffs' remand motion (which was made within 30 days) was presented on either of these two grounds. Since the motion had nothing to do with any procedural defect in the defendant's removal of the case, I do not share the majority's conclusion that the motion was based on a "defect in removal procedure."
 
 
 40
 To read "defect in removal procedure" to cover this case, the majority relies on a committee report from one house of Congress that suggests that a defect in procedure does not mean a procedural defect.[1] The majority consults the report after concluding that "defect in removal procedure" is ambiguous; but I see no ambiguity in that phrase. The word "procedure"--in legalese and the vernacular--is the mode and method of proceeding or going forward. Black's Law Dictionary 1367-68 (4th ed. 1951) ("The mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right."); Webster's Third New Int'l Unabridged Dictionary 1807 (1986) ("a particular way of doing or of going about the accomplishment of something"; "the established manner of conducting judicial business and litigation"). It is "the machinery, as distinguished from its product." Black's Law Dictionary at 1368. Giving the word "procedure" its ordinary meaning, the term "removal procedure" describes where, when, how, and in what form notices of removal are to be filed. This is the subject of § 1446 which (unsurprisingly) is headed "Procedure for removal." I conclude that the first sentence of § 1447(c) unambiguously describes remand motions claiming that the notice of removal suffered from a procedural defect.
 
 
 41
 The majority's reading of § 1447(c) creates a new statute in which "removal procedure" means virtually anything having to do with the notice of removal, except for questions of subject matter jurisdiction. This construction, however, disregards the word "procedure" and thereby offends the rule that we must give meaning to each term included by Congress. The majority's reading of "defect in removal procedure" effectively recasts it to say "defect in removal."
 
 
 42
 The Supreme Court very recently interpreted § 1447(c) in a way that reinforces my reading of "defect in removal procedure." Without turning the pages of House committee reports, the Court concluded that remanding a case "on grounds of untimely removal, [is] precisely the type of removal defect contemplated by § 1447(c)." Things Remembered, Inc. v. Petrarca, --- U.S. ----, ----, 116 S.Ct. 494, 497, 133 L.Ed.2d 461 (1995). From this I infer that § 1447(c) "contemplate[s]" particular "types" of removal defects, and not others. Similarly, the Court explained that untimely filing of the notice of removal is a defect that fits "precisely" within § 1447(c), from which I infer that other defects evidently will not fit as well. If the statute includes all jurisdictional or nonjurisdictional defects (or "almost all," as the majority says), then the Court's categorizing would make no sense. See also Quackenbush v. Allstate Ins. Co., --- U.S. ----, ----, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996) (abstention-based remand "does not fall into either category of remand order described in § 1447(c)").
 
 
 43
 All but one of the circuits that have considered § 1447(c) and the meaning of "defect in removal procedure" agree that it refers to procedural defects. (Parenthetical quotes are attached to the two citations that the majority opinion would distinguish.) Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1213 (3d Cir.), cert. denied, 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); Page v. City of Southfield, 45 F.3d 128, 131 (6th Cir. 1995) (The grounds "specified in § 1447(c)" are "a defect in removal procedure or lack of subject matter jurisdiction.... Here ... the district court ruled that the removal notice was procedurally defective...."); Matter of Continental Casualty Co., 29 F.3d 292, 293-94 (7th Cir.1994) (Easterbrook, J.); Melahn v. Pennock Ins., Inc., 965 F.2d 1497, 1503 (8th Cir.1992); Northern Calif. Dist. Council v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1038 (9th Cir.1995) ("The statutory purpose served by requiring defects in removal procedure to be raised promptly would be defeated if a party were free to raise such a procedural defect more that 30 days after the filing of the notice of removal." (emphasis added)). Some of these courts have concluded that the language of § 1447(c) "could not be clearer," and have expressly declined to consider the legislative history on which the majority relies here. Foster, 933 F.2d at 1213; see also Melahn, 965 F.2d at 1503. Others have defined the "defect[s] in removal procedure" in § 1447(c) in terms of compliance or noncompliance with the "procedures for removal," as set out in § 1446. See Continental, 29 F.3d at 294. Only the Fifth Circuit has concluded that the phrase "defect in removal procedure" has nothing to do with procedure. See In re Medscope Marine Ltd., 972 F.2d 107, 110 (5th Cir.1992) (concluding that "the 'removed improvidently' language of pre-1988 section 1447(c) was replaced, without intent to change the meaning, with the 'defect in removal procedure' in the current section 1447(c)").
 
 
 44
 I agree with the majority that this is an issue of first impression in this Circuit. Still, it is worth pointing out that our most recent decisions interpreting § 1447(c) implicitly give a procedural cast to the phrase "removal procedure". See LaFarge Coppee v. Venezolana De Cementos, 31 F.3d 70, 72 (2d Cir.1994) (untimeliness of removal constitutes a "defect in removal procedure"); Minot v. Eckardt-Minot, 13 F.3d 590, 592 (2d Cir.1994) (district court's decision to remand based on abstention doctrine is reviewable)[2]; Hamilton v. Aetna Life and Casualty Co., 5 F.3d 642, 644 (2d Cir.1993) (per curiam) ("[A]n order granting remand based either on a timely motion asserting a procedural defect or on a lack of federal subject matter jurisdiction is not reviewable." (emphasis added)), cert. denied, 510 U.S. 1130, 114 S.Ct. 1100, 127 L.Ed.2d 413 (1994).
 
 
 45
 The majority opinion quotes Miller, Wright, and Cooper, Federal Practice and Procedure, § 3739, for the proposition that, "Although the statute could have been more clearly drafted, it seems clear that it means that the 30-day limit applies to all motions to remand except in cases in which the court lacks subject matter jurisdiction." Maj. op. at 818. The treatise acknowledges that there are cases that reject that view, but justifies the broad statutory reading of the statute on the ground that "[i]t is hard to believe" that Congress would write § 1447(c) and yet "remain[ ] silent on when remand may be sought in the large and important class of cases left in the middle." Miller, Wright, and Cooper call this a "glaring casus omissus," Federal Practice and Procedure, § 3739 at 286 (1996 Supp.), taking the words from my mouth. But it cannot be expected that Congress will create perfect, seamless statutes. Congressional silence may reflect poor drafting or flawed understanding, or it may reflect a purposeful and conscious avoidance of a difficult issue on which consensus is unavailable. It is easy for me to believe that Congress enacted a statute that failed to account for a large class of cases. Along the same lines, the majority opinion asserts that "[t]here is no reason that Congress' concern with unfairness and inefficiency would be confined to remand motions based on procedural grounds." Maj. op. at 817. I think that one good reason for the statutory design is that procedural flaws (compared with others) can be detected sooner and more easily, and if forfeited are less of a loss. In any event, however, I am unwilling to improve on what Congress has given us, as I believe the majority has done.
 
 
 46
 In summary, I believe that we are barred from reviewing district court determinations that a removal notice was procedurally defective or that the court lacked subject matter jurisdiction to hear the case, but that we otherwise have the power to review orders that remand cases to state court. Because the district court did not remand this case on either of these specified grounds, I would hold that we have appellate jurisdiction to hear the merits of this dispute.
 
 
 
 [1]
 Whether or not the court was correct in that conclusion is an issue we specifically do not reach here
 
 
 [2]
 In support of its decision, the district court expressed the view that, because the Jones Act is a part of the admiralty law, suits brought under it are not removable. We need not pass on the correctness of this reasoning because the non-removability of Jones Act cases is provided by an express statutory removal prohibition. See Gonsalves v. Amoco Shipping Co., 733 F.2d 1020, 1022 (2d Cir.1984)
 
 
 [3]
 This policy is also reflected in other statutes where Congress has made remand orders non-appealable. For example, in the bankruptcy context, a claim remanded under 28 U.S.C. § 1452(b) "on any equitable ground," may not be reviewed on appeal. 28 U.S.C. § 1452(b). See In re Cathedral of the Incarnation, 90 F.3d 28 (2d Cir.1996). Similarly, 28 U.S.C. § 1334(d), also dealing with bankruptcy cases, provides that "[a]ny decision to abstain or not to abstain [with certain exceptions] is not reviewable by appeal or otherwise."
 
 
 [4]
 This circuit has reviewed timely remand orders based on a party's claim of possible "defects in removal procedure" in at least two recent decisions. See Minot v. Eckardt-Minot, 13 F.3d 590 (2d Cir.1994) (remand based on district court's invocation of abstention doctrine); Travelers Ins. Co. v. Keeling, 996 F.2d 1485 (2d Cir.1993) (remand based on construction of contractual terms). However, in both of these cases, the court's analysis was based on the pre-amendment language of § 1447(c). See Minot, 13 F.3d at 592; Travelers, 996 F.2d at 1488 n. 2
 
 
 [5]
 The district court in Page had remanded the case sua sponte because not all of the defendants communicated their consent to removal within the proscribed 30-day period. The Sixth Circuit held that it did not have the authority to review this decision, since it fell within the purview of 1447(c). The court went on to remand the case to district court, however, on the ground that 1447(c) does not authorize sua sponte remands for procedural defects, but only pursuant to timely motions to remand. Id. at 131-34
 
 
 [6]
 Plaintiffs had filed a remand motion within 30 days of removal based solely on the argument that a forum selection clause required remand. They did not raise the procedural issue (failure to join a named co-defendant in the removal petition) until they filed a reply brief, more than 30 days after the filing of the removal petition
 
 
 [1]
 The majority cites Professors Eskridge and Frickey in support of the view that committee reports are authoritative indicators of congressional "intent"; but Eskridge and Frickey are quick to point out the "limitations on the usefulness of committee reports in giving meaning to ambiguous statutes." Cases and Materials on Legislation 743 (2d ed. 1995). One such limitation is based on the observation from public choice theory that Congress's decisions (particularly submerged ones such as the language that winds up in committee reports) bear the finger marks of interest groups:
 Lobbyists and lawyers maneuver endlessly to persuade staff members (who write the committee reports) or their legislative bosses to throw in helpful language in the reports when insertion of similar language would be inappropriate or infeasible for the statute itself. "Smuggling in" helpful language through the legislative history is a time-tested practice.
 Id. at 744.
 
 
 [2]
 The majority opinion notes Minot's quotation of the pre-1988 language of § 1447(c). Maj. op. at 819 n.4. Minot's quotation of § 1447(c), however, appears in a sentence that deals with Thermtron, which is of course a pre-1988 case. In Minot, the case was removed in 1992 and remanded in 1993