Jeffrey R. **MINOT,** and Jeffrey R. Minot, as the Parent and Custodian of Stephen Rafael Minot, Plaintiff–Appellee,

v.

Astrid **ECKARDT–MINOT,** Defendant–Appellant.

No. 563, Docket 93–7393.

United States Court of Appeals, Second Circuit.

Argued Nov. 10, 1993.

Decided Jan. 7, 1994.

Cynthia Knox, New York City (Stuart R. Wolk, Wolk, Neuman & Maziarz, New York City), for defendant-appellant.

Charles W. Gerdts, III, New York City (Diana L. Weiss, Donovan Leisure Newton & Irvine, New York City), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, CARDAMONE and GOODWIN,* Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal concerns the propriety of abstention in the context of a diversity tort suit implicating state domestic relations law. This issue arises on the appeal of defendant-appellant Astrid Eckardt–Minot from the April 19, 1993, judgment of the District Court for the Southern District of New York (Michael B. Mukasey, Judge) remanding the removed action of plaintiff-appellee Jeffrey Minot to New York State Supreme Court. Though we are somewhat troubled by an abstention-based remand in this context, we conclude that the District Court exercised its discretion properly and therefore affirm.

## Background

This case vividly demonstrates the unfortunate consequences that often result from a contentious custody battle. In this instance, the sad human drama has spilled into federal court, raising close questions of federal jurisdiction and federal appellate practice along the way.

Eckardt–Minot and Minot were married in 1986, in Heidelberg, West Germany, though they apparently moved to New York soon after. The parties' only child, Stephen Rafael Minot ("Stephen"), was born in New York in 1987. Eckardt–Minot later decided to separate from her husband and return to Germany. After arranging to have her belongings moved from the marital residence, Eckardt–Minot relocated to Germany with Stephen; the parties apparently agreed initially that she would have custody of Stephen. Eckardt–Minot returned to New York with Stephen for visits in November of 1988 and again in February of 1989.

While in New York on the second visit, Eckardt–Minot was served with a New York

---

* The Honorable Alfred T. Goodwin of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Supreme Court summons and complaint in an action for divorce, along with a temporary restraining order prohibiting her from leaving New York with Stephen pending a hearing scheduled four days later. Eckardt–Minot immediately returned to Germany with Stephen, and promptly instituted an action for custody of Stephen in the Family Court of Heidelberg. Meanwhile, after conducting hearings without Eckardt–Minot, New York Supreme Court Justice Kristin Booth Glen awarded temporary custody of Stephen to Minot and ordered Eckardt–Minot to discontinue the German custody action and return with the child from Germany. Thereafter, Justice Glen entered a judgment that (1) granted Minot a divorce, (2) concluded that New York had jurisdiction over this custody dispute, (3) awarded permanent custody of Stephen to Minot, and (4) ordered Eckardt–Minot to facilitate Stephen's return to New York.

On the same day that judgment was entered in the New York action, the Family Court of Heidelberg awarded temporary custody of Stephen to Eckardt–Minot, though this decision was later reversed by a German appellate court. The issue of custody was remanded to the Heidelberg Family Court, and according to Eckardt–Minot's counsel, the Family Court has recently again awarded custody to Eckardt–Minot. Meanwhile, Justice Glen had written to Judge Fried of the Heidelberg Family Court requesting that he dismiss Eckardt–Minot's custody action so that a "complete and impartial hearing" could be held in New York Supreme Court.

In April of 1992, Minot commenced the instant action in New York state court seeking damages for Eckardt–Minot's violations of his rights under the New York custody orders. This action, brought personally and on Stephen's behalf, alleges torts of intentional infliction of emotional distress, damage to family relationship, violation of civil rights, and other similar claims. Later in April, Eckardt–Minot's German attorney wrote a letter to Justice Glen, giving his account of the entire case and suggesting that Minot obtained the New York orders through fraud. In this letter, Eckardt–Minot's counsel requested that Justice Glen "review" her

judgment, and "take appropriate steps in order to avoid injustice by annulling judgments which were obtained by fraud." Then, in May of 1992, Eckardt–Minot removed this case to the U.S. District Court for the Southern District of New York based on diversity of citizenship, and Minot later moved to remand the case back to state court.

In April of 1993, the District Court granted Minot's remand motion. Relying on *Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the District Court held that the "domestic relations exception" to diversity jurisdiction was inapplicable to what was in essence a tort claim, and thus the court had subject matter jurisdiction. Nevertheless, the Court concluded that abstention was appropriate because of the family-law nature of the dispute and because Eckardt–Minot's "motion to reopen the custody case and redefine the domestic relationship is still pending in state court before Justice Glen."

### Discussion

1. Proper Mode for Review—Direct Appeal or Mandamus?

We first consider whether we have appellate jurisdiction, notwithstanding Minot's explicit decision not to contest our jurisdiction.

■ The statute that provides for remands after removals states that, with one exception that is not relevant here, a remand "is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d) (1988). The Supreme Court has held, however, that the prohibition of appellate review in section 1447(d) applies only to remand orders issued pursuant to section 1447(c), which provides for remand when a case has been removed "improvident[ly] and without jurisdiction." *See Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976). Thus, since the District Court invoked abstention doctrines, rather than a jurisdictional defect, to justify its remand, section 1447(d) does not bar appellate review. *See Corcoran v. Ardra Insurance Co.,* 842 F.2d 31, 33–34 (2d Cir.1988); *see also Doughty v. Underwriters at Lloyd's,* 6 F.3d 856, 860 (1st Cir.1993).

Nevertheless, though some form of appellate review of the District Court's remand decision is permitted, the proper means for doing so is still in question. Eckardt–Minot has appealed from the District Court's remand order. However, this Court's decision in *Corcoran* might be read to suggest that a petition for mandamus is the only proper means for challenging a remand order in this context. *See Corcoran,* 842 F.2d at 34–35; *see also Pas v. Travelers Insurance Co.,* 7 F.3d 349, 353 (3d Cir.1993) (citing *Corcoran* for the proposition that discretionary remands are reviewable only by mandamus). Yet, *Corcoran* explained that when a district court's remand conclusively determines a collateral question (such as where the merits of a litigation will be resolved), that decision is appealable under the collateral-order doctrine. *See Corcoran,* 842 F.2d at 35 (citing *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949)).

■ We recently applied the *Corcoran* decision in *Travelers Insurance Co. v. Keeling,* 996 F.2d 1485 (2d Cir.1993). We held that a direct appeal was appropriate for review of that portion of a remand order that conclusively determined that the merits of two claims would be decided in state court. *See id.* at 1489. Thus, the rule in this Circuit is now clearly established: direct appeal is available from a remand order that conclusively determines which forum will decide the merits of a dispute.[1] Since the remand order in this case conclusively determined that a state court would decide the merits of the underlying dispute, direct appeal of the remand decision is appropriate.

## 2. Use of Abstention to Remand

■ Turning to the merits, we first note our general concern with employing abstention doctrines to remand a case properly removed to federal court on the basis of diversity jurisdiction. Though abstention may sometimes justify a remand of a removed case, *see, e.g., Corcoran,* 842 F.2d at

36–37 (approving abstention based on the principles announced in *Burford v. Sun Oil Co.,* 319 U.S. 315, 334, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943)), caution is warranted in diversity cases. The possibility of prejudice to out-of-state litigants, which provides whatever diminishing justification for federal diversity jurisdiction remains, suggests that courts should be wary of using judicially-crafted abstention doctrines to deny out-of-state litigants a federal forum that they prefer. *See generally Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 31–44, 79 S.Ct. 1070, 1074–81, 3 L.Ed.2d 1058 (1959) (Brennan, J., dissenting); *Burford,* 319 U.S. at 336–48, 63 S.Ct. at 1108–1114 (Frankfurter, J., dissenting). Further, though the extent of prejudice against out-of-state litigants is often justifiably doubted, "the spectre of local bias ... surfaces with unfortunate frequency" in the context of inter-jurisdictional custody disputes, *see DiRuggiero v. Rodgers,* 743 F.2d 1009, 1019 (3d Cir.1984), especially in a dispute of international dimensions. Moreover, "[i]t is axiomatic ... that 'abstention from the exercise of federal jurisdiction is the exception, not the rule.' ... Abstention should rarely be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992) (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). Thus, the reasons for abstention must be strong to justify a decision to remand a case properly removed from state court, especially in this context.

■ Yet, the facts of this case reveal that the District Court's reasons for abstaining were in fact quite strong. The underlying action is perhaps a paradigmatic example of a case presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case ... at bar." *See Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244 (describing the requirements for *Bur-*

---

1. Conversely, when a district court's remand order does not determine the forum in which the dispute will ultimately be decided—*i.e.* when the remand simply returns to the state court the

threshold question of where the underlying dispute is to be decided—a petition for mandamus is the only way to obtain appellate review. *See Travelers Insurance,* 996 F.2d at 1488–89.

*ford*-type abstention). Minot is seeking to recover on various grounds for Eckardt–Minot's violations of his New York custody orders. In essence, Minot seeks recovery on theories akin to what has been called a "tort of custodial interference." *See, e.g., Plante v. Engel,* 124 N.H. 213, 469 A.2d 1299, 1301 (1983). Although other jurisdictions have developed some law in this area, *see Larson v. Dunn,* 460 N.W.2d 39, 44 n. 3 (Minn.1990) (noting cases from twenty-one jurisdictions), New York has very few cases dealing with this tort or related torts in this context.[2] The recognition and delineation of such a tort is clearly a difficult matter of great public import for New York law. A tort doctrine that permitted parents to vindicate their custody rights by obtaining money judgments against alleged transgressors would significantly change the landscape of custody disputes. *See Zaharias v. Gammill,* 844 P.2d 137, 139–40 (Okla.1992) (noting the policy concerns implicated by recognizing a tort of custodial interference). A state court should lead the way in developing its law in this area, balancing the delicate issues involved here. *Cf. Casaburro v. Daher,* 569 F.Supp. 835, 836 (S.D.N.Y.1983) (abstaining from adjudicating similar tort claims, noting that "federal courts have little experience with the state policies and precedents that govern the construction of [separation] agreements[, and] ... [q]uestions concerning child custody ... are peculiarly ill-suited for federal court adjudication").[3]

Even though this area of the law is ill-suited to federal court determinations, the family-law nature of the subject matter would not alone justify abstention in this case. *See McIntyre v. McIntyre,* 771 F.2d 1316, 1318–19 (9th Cir.1985) (refusing to abstain from deciding similar claim of intentional interference with visitation rights); *see also DiRuggiero,* 743 F.2d at 1018–20. However, faced with Minot's motion to remand, the District Court properly believed that issues remained pending in the state court concerning the custody of Stephen and the validity of the initial state court orders that are the primary basis of this tort suit. Eckardt–Minot's German counsel had requested Justice Glen to reconsider her orders and "take appropriate steps in order to avoid injustice by annulling judgments which were obtained by fraud." Further, Justice Glen had written to Judge Fried of the Heidelberg Family Court requesting that he dismiss Eckardt–Minot's custody action so that a "complete and impartial hearing" could be held in New York Supreme Court. This indicates that Justice Glen did not consider the parties' custody dispute to be conclusively settled.

The Supreme Court in *Ankenbrandt* suggested that *Burford* abstention in family-law disputes might be particularly appropriate when "the suit depended on a determination of the status of the parties." *Ankenbrandt,* — U.S. at ——, 112 S.Ct. at 2216. Similarly, this Court found "particularly strong" reasons for abstaining in a case involving a

**2.** The only significant recent New York state case even considering these sorts of claims is *Harley v. Harley,* 170 A.D.2d 779, 565 N.Y.S.2d 625 (1991), *appeal dismissed,* 79 N.Y.2d 1035, 584 N.Y.S.2d 441, 594 N.E.2d 935 (1992), and it does not illuminate the status under New York law of the torts alleged by Minot. *Harley* involved a set of custody-related tort claims by a husband against his former wife. *See id.* at 626. The Court merely stated that the husband's claims were neither viable nor frivolous, suggesting that the validity of custody-based torts would depend upon the facts of each particular case. *See id.* at 626–27.

In *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y. 1978), a federal district court purporting to apply New York law recognized a tort in the "unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody." *Id.* at 18. However, no New York state case has

subsequently recognized or significantly discussed the torts elaborated in *Kajtazi.*

**3.** Notably, this case would not involve a "simple" application of the tort of custodial interference. Eckardt–Minot is not a kidnapper who clearly and knowingly violated undisputed custody orders. Rather, Eckardt–Minot resists the New York court orders based on a good-faith belief that these orders were obtained through fraud and are therefore invalid. Because the equities in this case are tangled, defining and developing the exact contours of a tort of custodial interference would be especially complicated here. *Cf. Fay v. South Colonie Central School District,* 802 F.2d 21, 31–33 (2d Cir.1986) (abstaining from deciding claim involving father's right to control his children's upbringing, noting that an emerging and unsettled body of New York family law would be controlling on various issues).

divorced couple's separation agreement, in part because New York courts had a continuing power to modify or enforce the agreement. *See Fay v. South Colonie Central School District,* 802 F.2d 21, 32 (2d Cir.1986). Thus, this would appear to be that rare case the Supreme Court had in mind when it suggested that "in certain circumstances, the abstention principles developed in *Burford* ... might be relevant in a case involving elements of the domestic relationship." *Ankenbrandt,* — U.S. at —, 112 S.Ct. at 2216. The evidence before the District Court when it ruled on the motion to remand plainly suggested that the dispute as to custody was still pending in state court. Thus, the District Court's decision to abstain and remand to state court cannot be deemed an abuse of discretion. *See Bethpage Lutheran Service, Inc. v. Weicker,* 965 F.2d 1239, 1244 (2d Cir.1992).

The judgment of the District Court is affirmed.