Susan C. TILLEY, Plaintiff,

v.

ANIXTER INCORPORATED, Pacer/Anixter, Inc. and David G. Tilley, Defendants.

No. CIVA3–02–CV–1312 (JCH).

United States District Court, D. Connecticut.

Sept. 19, 2003.

Robert B. Muchinsky, Hartford, CT, for Plaintiff.

Steven David Ecker, James Ross Smart, Cowdery, Ecker & Murphy, Hartford, CT, William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS [DKT. NO. 10]

HALL, District Judge.

The plaintiff, Susan Tilley, filed this tort action alleging that the defendants, Anixter, Inc., Pacer/Anixter, Inc. and her former husband, David G. Tilley, conspired to alter the reporting of Mr. Tilley's income during the Tilley's 1994 divorce proceedings. The plaintiff alleges federal jurisdiction based on diversity, pursuant to section 1332 of title 28 of the United States Code. Defendants Anixter Incorporated and Pacer/Anixter, Inc. ("defendants") moved to dismiss the plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the case is a domestic relations matter over which the court has no jurisdiction. [Dkt No. 10].

Defendant Tilley has joined in this motion to dismiss. [Dkt. No. 12]. The court dismisses the first two counts for fraud and conspiracy for failure to state a claim. With respect to the third count for intentional infliction of emotional distress, the court rejects the defendants' arguments concerning the applicability of the domestic relations exception and abstention and concludes that federal jurisdiction is proper.

## I. BACKGROUND

The plaintiff's complaint alleges that on October 18, 1994, the plaintiff and David G. Tilley ("Mr. Tilley") were divorced in the State of Connecticut, Superior Court, in the Judicial District of Hartford. The plaintiff alleges that, at the time of the divorce, the court and the plaintiff were deceived as to the actual earnings of Mr. Tilley, and that as a result the plaintiff was awarded an amount of child support substantially less than she should have been awarded if the court and the plaintiff had not been so deceived. Compl. ¶ 11 [Dkt. No. 1]. The plaintiff alleges that the court was deceived by the testimony of Mr. Tilley and Michael Rosa, then president of Pacer/Anixter, Inc. *Id.*

The plaintiff further alleges that the defendants, Pacer/Anixter, Inc., and Anixter Incorporated, altered the payroll records of the company and caused Mr. Tilley's income to be attributed to his then girlfriend, Terri Stephenson. *Id.* ¶ 12. The plaintiff alleges that the defendants' purpose was to deceive the plaintiff and the court in order to provide Mr. Tilley with a record of a lower income in order to minimize the amount in child support payments that he would have to pay to the plaintiff. *Id.* ¶ 13.

The complaint alleges three causes of action. The first claim is that Mr. Tilley and Michael Rosa made purposely fraudu-

lent statements to the court to induce the plaintiff to accept a lower amount of money for child support. *Id.* ¶¶ 16, 17. This cause of action states that in reliance upon those statements, the court awarded the plaintiff less child support that it should, or would, have had the false representations not been made. *Id.* ¶ 18.

The second cause of action alleges that the defendants conspired to conceal the true earnings of Mr. Tilley by altering the payroll records. *Id.* ¶ 21. The complaint alleges that the defendants conspired to hide the true earnings of Mr. Tilley, so that he could represent to the court that he earned less than he actually did, and thereby reduce the amount of his liability for child support payments to the plaintiff. *Id.* ¶ 23. The plaintiff alleges that, as a result of the defendants' actions, she received less child support and suffered substantial damage.

The third count in the complaint alleges intentional infliction of emotional distress. The complaint alleges that the defendants have "willfully and or intentionally and or wantonly conspired to defraud the plaintiff so that she would receive less money in child support than she was entitled to under the law." *Id.* ¶ 26. The plaintiff alleges that the actions of the defendants were extremely outrageous and intentionally or recklessly caused severe emotional distress to the plaintiff.

## II. DISCUSSION

The defendants have moved to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of federal subject matter jurisdiction. The defendants argue that this court lacks jurisdiction over this matter because it is a domestic relations matter. Mem. in Supp. of Mot. to Dismiss [Dkt. No. 11] at 6. The plaintiff argues that, because the action involves fairly traditional areas of tort law [1] and names a defendant that was never part of the marital relationship, the domestic relations exception to federal diversity jurisdiction does not apply.

■ A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). A plaintiff asserting subject matter jurisdiction generally has the burden, once challenged, of proving by a preponderance of the evidence that jurisdiction exists. *Id.* In resolving a motion to dismiss under Rule 12(b)(1), a court is not limited to the face of the complaint, but may consider evidence, including affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001). When a court reviews a complaint under a factual attack for lack of subject matter jurisdiction, it must determine whether or not the factual predicate for subject matter exists. *United Transp. Unions 385 & 77 v. Metro–North Commuter,* 862 F.Supp. 55, 57 (S.D.N.Y.1994).

■ The domestic relations exception to federal jurisdiction dates from 1859, when the Supreme Court announced that the federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 21 How. 582, 16 L.Ed. 226 (1858). The Court in *Barber* wrote, "[w]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for

---

**1.** The court notes that, in Connecticut, as in many other jurisdictions, the doctrine of spousal immunity has been abrogated and therefore spouses may bring tort actions against each other. *See Silverman v. Silverman,* 145 Conn. 663, 666, 145 A.2d 826 (1958).

the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce a *vinculo,* or to one from bed and board." *Id.* at 584, 21 How. 582. The exception is based on an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). The exception is grounded, not in the Constitution, but as a matter of "statutory construction" of the federal diversity statute. *Ankenbrandt v. Richards,* 504 U.S. 689, 700, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).

Recently the Supreme Court clarified the limits of the domestic relations exception. In *Ankenbrandt v. Richards,* the Court overturned a lower court decision in which the domestic relations exception was invoked in a case involving tort allegations brought by the mother of two young children, in which she charged her ex-husband with sexually abusing the two girls. The court found that the domestic relations exception should not apply in such a case because the status of the domestic relationship had already been determined as a matter of state law, and the status of the relationship had "no bearing on the underlying torts alleged." *Id.* at 706, 112 S.Ct. 2206. Thus, the Court reasoned, "[b]ecause the allegations in the complaint d[id] not request the District Court to issue a divorce, alimony, or child custody decree," federal jurisdiction was proper. *Id.* The Court concluded that "the domestic relations exception encompasse[d] only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704, 112 S.Ct. 2206.

In this case, the defendants argue that the plaintiff's complaint is an effort to obtain new, retroactive child support payment orders, and therefore fits squarely within the domestic relations exception. The defendants characterize the claims in the complaint as asking the court to "revisit the dissolution action by (1) determining that the dissolution judgment was tainted by fraud, and (2) calculating what the order for support payments should have been, absent the alleged fraud, and awarding the difference to plaintiff." Reply Brief [Dkt. No. 18] at 3. The plaintiff argues, however, that the action does not seek to deal with or intend to obtain, alter or end the divorce alimony or child custody decree, but rather is a tort action based on the fraud and conspiracy of the defendants. Pl.'s Mem. in Opp. [Dkt. No. 16] at 2.

### A. *Fraud Claims*

■ In Connecticut, common law fraud has four essential elements: " '(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.' " *Suffield Development Associates Limited Partnership v. National Loan Investors, L.P.,* 260 Conn. 766, 777, 802 A.2d 44 (2002) (quoting, *Barbara Weisman v. Kaspar,* 233 Conn. 531, 539, 661 A.2d 530 (1995)). Here, the plaintiff alleges that the defendants made knowingly false representations to the Superior Court, and that Superior Court relied upon the false statements and awarded the plaintiff less child support than she would have otherwise been awarded. In a case such as this, where one party has made fraudulent representations to the court, or caused the court to be misled, it can be said that the party has committed a fraud upon the court. *Id.*

In Connecticut, however, the Connecticut Supreme Court has specifically reject-

ed a cause of action to recover damages arising from a fraud upon the court. In *Suffield Development,* the Court found that "[t]he plaintiff asserte[ed] that the defendant made a fraudulent misrepresentation, not to the plaintiff but to the trial court, which induced the trial court to act to the plaintiff's detriment." 260 Conn. at 780, 802 A.2d 44. The plaintiff sought to recover damages based upon the defendant's fraud on the court, but the Supreme Court was unwilling to create a new common-law cause of action based upon the fraud on the court, and therefore dismissed the plaintiff's claim. *Id.* The Court found that, when one party makes a fraudulent misrepresentation to a court, or causes a court to be misled in some way, the statutory remedy calls for "a new trial for 'reasonable cause.'" *Id.* at 779, 802 A.2d 44.

In the context of a divorce action, the Connecticut Superior Court has also found that a plaintiff who alleges that a defendant made fraudulent financial representations during the course of divorce proceedings could not maintain a tort suit, but rather was required to petition to reopen the divorce proceedings. *Labow v. Labow,* No. CV 820210394S, 1999 WL 185150 at *3 (Conn.Super.Ct. March 15, 1999). The court found that "the nature of these issues and the nature of dissolution judgments require such claims to be asserted through a motion to open and modify the divorce proceedings, rather than through a separate action ...." *Id.* The court noted that the nature of awarding alimony and dividing parties' assets involved a "sensitive evaluation and weighing of a penumbra of considerations controlled by statute," and that a claim that an alimony award would have been made differently but for the fraudulent conduct is a "matter peculiarly within the province of the court issuing the award." *Id.* Likewise, in *Whelan v. Whelan,* 41 Conn.Supp. 519, 588

A.2d 251 (1991), the Superior Court concluded that "insofar as the plaintiff contends that a dissolution judgment against her was fraudulently obtained, her remedy is to move to open that judgment in full or in part on the ground of fraud ... rather than bring a new action sounding in tort." *Id.* at 253 (citing *Kenworthy v. Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980)).

The plaintiff also argues that, because Anixter Incorporated and Pacer/Anixter Inc. were not parties to the underlying divorce proceeding, this case is distinguishable from others in which courts have found a lack of subject matter jurisdiction for divorce fraud actions. While Anixter and Pacer/Anixter may not have been parties to the 1994 divorce proceedings, Connecticut courts have made it clear that in any action for fraud upon the court a plaintiff's only recourse is to reopen the original case an action which this court cannot perform. *See Labow,* 1999 WL 185150; *Whelan,* 41 Conn.Supp. 519, 588 A.2d 251.

██ The court therefore grants the defendants' motion to dismiss the plaintiff's fraud claim. The court also dismisses the plaintiff's claim for conspiracy to defraud. "[W]here the plaintiff is unable to establish the underlying cause of action for fraud, the cause of action for conspiracy to defraud must also fail." *Litchfield Asset Management Corp. v. Howell,* 70 Conn. App. 133, 799 A.2d 298, 302 (2002); *see also Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 208 (9th Cir.1991); *Dime Savings Bank of New York, FSB v. Fucetola,* 1994 WL 67054 (Conn.Super. Feb.24, 1994) ("If a claimant has no cause of action for fraud, he has no cause of action for conspiracy to commit fraud.").

B. *Intentional Infliction of Emotional Distress*

██ In addition to the claims for fraud, the plaintiff also asserts a claim for

intentional infliction of emotional distress. In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability for intentional infliction of emotional distress requires 'conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *DeLaurentis v. City of New Haven*, 220 Conn. 225, 266, 597 A.2d 807 (1991) (quoting *Petyan*, 200 Conn. at 254 n. 5, 510 A.2d 1337).

■ Courts have adopted divergent approaches in defining the scope of the domestic relations exception. *See generally* Francis M. Dougherty, "Domestic Relations" Exception to Jurisdiction of Federal Courts under Diversity of Citizenship Provisions of 28 U.S.C.A. § 1332(a), 100 A.L.R. Fed. 700 (1990). Nonetheless, "the domestic relations exception only applies to cases that are primarily marital disputes and, as the Second Circuit has commented, it 'has been rather narrowly confined.'" 13B Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3609, at 470–71 (citing *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 514 (1973)); *see generally Minot v. Eckardt–Minot*, 13 F.3d 590, 592, 594 (2d Cir.1994) (upholding district court determination that domestic relations exception was inapplicable).

■ Several factors present in this case suggest that the domestic relations exception is inapplicable here. First, the plaintiff alleges a traditional tort claim for intentional infliction of emotional distress. Although it has not been interpreted as creating a bright line rule, the Supreme Court's decision in *Ankenbrandt* held that the domestic relations exception encompasses only those cases which "involv[e] *the issuance* of a divorce, alimony, or child custody," 504 U.S. at 704, 112 S.Ct. 2206 (emphasis added), and the Court concluded that the exception did not apply to the case before it, one which alleged various tort claims. Following this lead, several courts have ruled that claims for intentional infliction of emotional distress instituted by a spouse against a former spouse do not fit within the domestic relations exception. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1112 (10th Cir.2000) ("Plaintiff's complaint also alleges ... intentional infliction of emotional distress. The Supreme Court in *Ankenbrandt* made clear that such tort claims do not fall within the domestic relations exception ...."); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998) (holding that case for intentional infliction of emotional distress did not fit within the domestic relations exception); *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir.1988) ("[I]t appears that the domestic relations exception to diversity jurisdiction clearly does not apply to the claims of intentional infliction of emotional distress ...."); *cf. Minot v. Eckardt–Minot*, 13 F.3d 590, 592, 594 (2d Cir.1994) (domestic relations exception "inapplicable to what was in essence a tort claim"-i.e. a tort claim akin to a "tort of custodial interference").

However, even if *Ankenbrandt* cannot be read as having created a bright-line rule that the domestic relations exception does not encompass traditional actions that lie in tort, there are other factors that suggest federal jurisdiction is appropriate.

For example, the action involves a second defendant with no familial connection to the plaintiff. *Compare Strasen v. Strasen,* 897 F.Supp. 1179 (E.D.Wi.1995) (discussed below), *with Elmasri v. England,* 111 F.Supp.2d 212 (E.D.N.Y.2000) (plaintiff's claim alleging conspiracy by defendants to lie to state court in divorce and custody proceedings barred on multiple grounds, including collateral estoppel, Rooker–Feldman doctrine, and domestic relations exception). In a case strikingly similar to the instant case, the plaintiff alleged that her former husband and his new wife attempted to conceal their marital assets from the family court during the pendency of their divorce proceedings. *Strasen,* 897 F.Supp. 1179. The *Strasen* court held that there was federal jurisdiction because the plaintiff did "not seek a decree of divorce, alimony, or child custody," that her claims had "some relation to a divorce proceeding," and that "one of the defendants, [the new wife], ha[d] no marital relationship with the plaintiff whatsoever, and appear[ed] to stand in the same position vis a vis [the plaintiff] as 'any other opponent in a tort suit brought in federal court pursuant to diversity jurisdiction.'" *Id.* at 1182. The same conclusions obtain here, suggesting that the exercise of federal jurisdiction is proper.

 Finally, in this case, the underlying tort of intentional infliction of emotional distress has little bearing or effect on the Superior Court's issuance of a divorce decree, alimony, or child support award. *Cf. Minot v. Eckardt–Minot,* 13 F.3d 590, 595 (approving district court finding domestic relations exception to be inapplicable even though "the dispute as to custody was still pending in the state court" but ultimately finding abstention appropriate). The possible damages arising from the alleged intentional infliction of emotional distress-for instance, reimbursement for medical bills-are entirely distinct from the remedy the state family court might apply-a larger child support award, for example.[2] In any case, it was established at oral argument on this motion to dismiss that no active case that is in any way related to this action is now pending in state court.[3] For all of these reasons, the court concludes that the domestic relations exception to federal diversity jurisdiction does not apply in this case.

### C. Abstention

 Having found the domestic relations exception to be inapplicable, the court declines to abstain from exercising federal jurisdiction in this case based on the Second Circuit's decision in *Minot,* 13 F.3d 590.

> Abstention, that doctrine designed to promote federal state comity, is required when to render a decision would disrupt the establishment of a coherent state policy. It is axiomatic, however, that "abstention from the exercise of federal jurisdiction is the exception, not the

---

**2.** This court observes that because the counts alleging fraud and conspiracy have now been dismissed, the plaintiff no longer needs to show the distinct facts necessary to prove the elements for these claims, such as false misrepresentation, inducement, and reasonable reliance. *See, e.g., Suffield Dev. Assocs., Ltd. P'shp,* 260 Conn. at 777–78, 802 A.2d 44. To prevail on a claim for intentional infliction of emotional distress, however, the plaintiff does need to show "extreme and outrageous conduct" as well as the other necessary elements.

*See, e.g., Mercer v. Brunt,* 272 F.Supp.2d 181, 188 (D.Conn.2002) (citations omitted).

**3.** Although the plaintiff in her Memo Opp. Mot Dismiss [Dkt. No. 16] concedes that she filed in state court a motion for modification of child support a few months before she initiated her federal case, *id.* at 14, the court learned at oral argument that the motion was never claimed and the case remains closed.

rule." Abstention rarely should be invoked, because the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."

*Ankenbrandt,* 504 U.S. at 704–705, 112 S.Ct. 2206 (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)) (other citations and internal quotation marks omitted). It is worth noting that, although a court's decision to abstain has been termed discretionary, such a decision is reviewed "somewhat rigorous[ly]" in light of a federal court's "normal duty to adjudicate a controversy properly before it." *Dittmer v. County of Suffolk,* 146 F.3d 113, 116 (2d Cir.1998); *see In re Joint Eastern & Southern Dist. Asbestos Lit.,* 78 F.3d 764, 775 (2d. Cir. 1996) ("[B]ecause we are considering an exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. Thus, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements.") (internal quotation marks omitted).

The Second Circuit's opinion in *Minot* appears to decide the question before this court against abstention. *Cf. Bossom v. Bossom,* 551 F.2d 474 (2d Cir.1976) (finding abstention appropriate in case where plaintiff sought declaration of invalidity of a stipulation incorporated into a New York divorce decree). There, the court easily approved the district's determination that the domestic relations exception was inapplicable, but, with considerable hesitation, also upheld the district court's decision to abstain. Citing the same language from *Ankenbrandt* concerning abstention, the Second Circuit in *Minot* began its discussion by reiterating well-established principles concerning abstention:

Turning to the merits, we first note our general concern with employing abstention doctrines to remand a case properly removed to federal court on the basis of diversity jurisdiction.... Thus, the reasons for abstention must be strong to justify a decision to remand a case properly removed from state court, especially in this context.

13 F.3d at 593. In keeping with this tone, the court concluded by emphasizing how "rare" the case before it was to have justified abstention. *Id.* at 595 ("Thus, it would appear to be that rare case the Supreme Court had in mind when it suggested that 'in certain circumstances, the abstention principles developed in *Burford* ... might be relevant in a case involving elements of the domestic relationship.'" (citation omitted)).

Throughout the opinion, the court highlighted the unusual circumstances of the case that weighed in favor of the decision to abstain. First and foremost, the court was concerned with the difficult issues of state law implicated by the plaintiff's unusual theories of recovery. In addition to alleging a more traditional tort claim for intentional infliction of emotional distress, the complaint pled a cause of action for a tort arising from "damage to family relationship" resulting from violations of a child custody order issued in state court. *Id.* at 593. The court explained its first, and perhaps most important, reason for finding abstention to be proper by noting that Minot sought recovery on "theories akin to what has been called a 'tort of custodial interference,'" *id.* at 594, and therefore concluding that "[t]he underlying action is perhaps a paradigmatic example of a case presenting 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the re-

sult in the case … at bar,'" *id.* (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. 1236). The opinion elaborated:

> Although other jurisdictions have developed some law in this area, New York has very few cases dealing with this tort or related torts in this context. The recognition and delineation of such a tort is clearly a difficult matter of great public import for New York law. A tort doctrine that permitted parents to vindicate their custody rights by obtaining money judgments against alleged transgressors would significantly change the landscape of custody disputes. A state court should lead the way in developing its law in this area, balancing the delicate issues involved here.

*Id.* In contrast, the plaintiff here alleges a relatively uncomplicated claim based on the traditional tort of intentional infliction, which federal courts are entirely competent to adjudicate. *Cf. Bennett v. Bennett,* 682 F.2d 1039, 1042 (D.C.Cir.1982) ("A federal court is entirely competent, in this case as much as any other, to determine traditional tort issues such as the existence of a legal duty, the breach of that duty, and the damages flowing from that breach. Although the existence of a legal duty in this case may depend in whole or in part on the validity and effect of the various state court decrees in existence at the time of the alleged tort, the task of determining such validity and effect is also not beyond the competence of the federal courts.").

Also weighing in favor of abstention was the unique, and notably relevant, state of affairs in the pending case in state family court. The *Minot* court, after noting that abstention was particularly appropriate in family-law disputes when "the suit depended on a determination of the status of the parties," *id.* at 594 (quoting *Ankenbrandt,* 504 U.S. at 706, 112 S.Ct. 2206), observed that, in the case before it, "the dispute as to custody was still pending in state court," *id.* at 595. Thus, whereas in *Minot* adjudicating the issue of whether the plaintiff was entitled to recover depended on a determination inextricably intertwined with state court family law matters, *i.e.* the question of which party had custody, this suit requires the court to determine only whether Mr. Tilley's representations concerning his income were accurate, a determination this court is fully competent to make.[4] Thus, the court refrains from exercising its discretion to abstain in this matter.

For these reasons, the court denies the defendant's motion to dismiss with regard to the plaintiff's claim for intentional infliction of emotional distress.

## III. CONCLUSION

For the foregoing reasons the defendants' motion to dismiss is granted in part and denied in part. Claims One and Two are dismissed, but Claim Three, alleging intentional infliction of emotional distress, survives.

**SO ORDERED.**

---

4. Moreover, in contrast to the circumstances in *Minot,* there appears to be no pending state case in this matter.