In re Gershon NAVON, Alleged Debtor.

Frank Simon, Petitioning Creditor,

v.

Gershon Navon, Respondent.

No. 01–51149.

United States Bankruptcy Court,
D. Connecticut.

Sept. 19, 2002.

Joseph M. Cloutier, Rockport, ME, Elizabeth J. Austin, Pullman and Comley, LLC, Bridgeport, CT, for petitioning creditor.

Louis J. Testa, Jeffrey R. Hellman, Zeisler & Zeisler, PC, Bridgeport, CT, for respondent.

## MEMORANDUM OF DECISION ON ORDER FOR RELIEF ON INVOLUNTARY PETITION

ALAN H. W. SHIFF, Chief Judge.

On September 21, 2001, petitioning creditor, Frank Simon, commenced this involuntary chapter 7 case against the alleged debtor, Gershon Navon. On October 26 2001, Navon filed an amended answer denying that an involuntary petition could be commenced against him and asserting an affirmative defense and a counterclaim. *See* 11 U.S.C. § 303(d).[1] Specifically, Navon contends that he had no interest in any property within the United States as of the petition date. *See* § 109(a).[2]

## BACKGROUND

Simon and Navon were business partners. *See July 24, 2002 Trial hearing record* at 2:21, 2:27, 2:30. Simon is the holder of a 1994 final judgment entered against Navon in the United States Dis

trict Court for the District of Maine in the amount of $1,661,622.71 plus interest. *See Simon v. Navon,* 71 F.3d 9 (1st Cir.1995). *See also hearing record* at 2:23 – 2:26, 2:34, 2:57. Until 1992, Navon was the president and sole shareholder of Mariculture Products Corporation ("MPC"), a fish farming aquaculture venture, which was incorporated in Maine in 1987. *Id.* at 4, *hearing record* at 10:56, 11:19, 11:24, 2:11, 2:30. Dean Read, a commercial loan officer and former senior vice president at Key Bank, Augusta, Maine, testified that he met Navon in the late 1980s and facilitated a loan to MPC, predicated on financial information Navon had provided, which included $3,175,000 in MPC stock listed on his personal financial statement. *See hearing record* at 12:41, 1:03; *Plaintiff's Exh. A* and *B.* MPC was the parent company and owner of Mariculture Products Limited ("MPL"). Navon served as president of MPL and Natura Building Systems, which handled the construction of the fish pens for MPC and MPL. *Hearing record* at 11:20, 2:22; *Plaintiff's Exh. D.* On the basis of personal discussions with Navon and the disclosures on his financial statements, it was apparent to Read that Navon considered MPC and MPL to be the same company. *Hearing record* at 12:43.

## DISCUSSION

A petitioning creditor must satisfy the requirements of 11 U.S.C. § 303. *In re Gutfran,* 210 B.R. 672 (Bankr.D.Conn. 1997). Thus, the issue here is whether Simon has satisfied the burden of proving

1. Section 303 provides in relevant part:
   (a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person ... that may be a debtor under the chapter under which such case is commenced.
   (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
   ...

   (2) ... by one or more [holders of noncontingent claims] that hold in the aggregate at least $11,625 of such claims.

2. Section 109(a) provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title."

that Navon owned property in the United States as of the petition date, as required by § 109(a). No other § 303 eligibility issue has been has been raised by Navon.

 The unrefuted testimony of Simon and Read demonstrated that Navon owned property in Maine in 1992, i.e., approximately $3,000,000 of MPC stock. That evidence established a prima facie case that he had property in the United States on the 2001 petition date.[3] Accordingly, the burden of proof shifted to Navon to offer persuasive rebuttal evidence, e.g., that he did not have a property interest in MPC in 1992, or that he no longer had such an interest in MPC on the date of the petition and any transfer of any interest could not be avoided, or that any interest in MPC stock that he may have had on the petition date was worthless. However, Navon offered no such rebuttal or explanation. Indeed he offered no evidence at all other than his attorney's cross examination of Simon and Read, which failed to discredit their testimony or dispute their assertion that Navon personally owned MPC $3,000,000 of stock in 1992. To the contrary, as Navon's attorney conceded, no evidence was introduced to suggest that Navon's ownership of the stock in MPC had ever been transferred. *Hearing record* at 3:00. Accordingly, it is concluded that Navon had the requisite interest in property to satisfy § 303.

 That conclusion is buttressed by the fact that Navon failed to testify, although his availability was apparent since he testified at a Connecticut state court proceeding as a witness in September of 2001. *Hearing record* at 2:39.[4] Moreover, and more to the point, he listed himself as a witness on his July 1, 2001 witness list, filed 23 days before the scheduled trial. Accordingly, an adverse inference may be drawn from his failure to testify in support of his answer to the involuntary petition, which denied his eligibility under § 303. *See Answer. See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.,* 196 F.3d 409, 432 n. 10 (2d Cir.1999) (adverse inference permitted when witness's testimony would be material); *Cousin v. Office of Thrift Supervision,* 73 F.3d 1242, 1248 (2nd Cir.1996) (same). *See also State v. Bailey,* 56 Conn.App. 760, 761 n. 1, 746 A.2d 194 (2000) (reiterating the Connecticut Supreme Court's *Secondino rule,* under which the failure to produce an available trial witness whom a party would naturally be expected to call warrants an adverse inference against that party.).[5]

An order for relief shall enter, and IT IS SO ORDERED.

**3.** In the context of a contested involuntary bankruptcy proceeding, a petitioning creditor has the burden of establishing a prima facie case that no bona fide dispute exists. If that is established, the burden then shifts to the alleged debtor to present evidence demonstrating that a bona fide dispute exists, e.g., as to the amount or validity of the claim. *See In re Gutfran,* 210 B.R. 672 (Bankr.D.Conn. 1997) (*citing Rimell v. Mark Twain Bank (In re Rimell),* 946 F.2d 1363, 1365 (8th Cir. 1991), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992)).

**4.** Although Navon is a resident and domiciliary of Israel, he was served with the involuntary petition on September 25, 2001 when he returned to testify in that proceeding. *Hearing record* at 2:40.

**5.** A conclusion that Navon was available to testify but was evading judicial process is supported by Simon's unchallenged testimony that, in response to Simon's efforts to locate him to collect the 1994 judgment, Navon moved from the United States to England and then to Israel. *Hearing record* at 2:24–25, 2:34–35.