399 F.3d 436
 MT. McKINLEY INSURANCE COMPANY, f/k/a Gibralter Casualty Co., and Everest Reinsurance Company, f/k/a Prudential Reinsurance Co., Plaintiffs,
v.
CORNING INCORPORATED, Defendant-Appellee,
AIU Insurance Company, Allianz Insurance Company, American Centennial Ins. Co., Century Indemnity Co., as successor-in-interest to the Insurance Company of North America, California Union Ins. Co., the Continental Insurance Company, Employers Insurance of Wausau, Executive Risk Indemnity, Inc., as successor-in-interest to American Excess Insurance Company, Federal Insurance Company, Fireman's Fund Insurance Company, First State Insurance Co., Government Employees Insurance Company a/k/a Geico, Granite State Insurance Company, Great American Insurance Company, Hartford Accident and Indemnity Company, Highlands Insurance Company, the Home Insurance Company, Hudson Insurance Company, Kemper Insurance Company, as successor-in-interest to Lumbermen's Mutual Casualty Company, Lexington Insurance Company,
National Union Fire Insurance Company, New England Reinsurance Corporation, a/k/a New England Insurance Company, North River Insurance Company, Old Republic Insurance Company, Pacific Insurance Company, Puritan Excess and Surplus Lines Insurance Company, Republic Insurance Company, Royal Indemnity Company, Westchester Fire Insurance Company, as successor-in-interest to International Insurance Company, Allstate Insurance Company, f/k/a Northbrook Indemnity Company, as successor-in-interest to Northbrook Excess & Surplus Insurance Company, Defendants,
American Home Assurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Continental Casualty Company, Travelers Casualty & Surety Company, as successor-in-interest to Aetna Casualty & Surety Company, Defendants-Appellants,
 Docket No. 03-7740.
 United States Court of Appeals, Second Circuit.
 Argued: September 28, 2004.
 Decided: February 16, 2005.
 
 COPYRIGHT MATERIAL OMITTED M. Miller Baker, McDermott, Will & Emery (Richard B. Rogers and Michael S. Nadel, on the brief), Washington, D.C.; Rodney L. Eshelman and Gretchen A. Ramos, Carroll, Burdick & McDonough LLP, San Francisco, CA., for Defendant-Appellant Continental Casualty Co.
 Richard C. Milazzo, Dennis J. McEnery, Mendes & Mount, LLP, New York, NY; H. Lee Godfrey, Neal S. Manne, Max Tribble, Joseph S. Grinstein, Susman Godfrey, LLP, Houston, TX, for Defendants-Appellants London Market Insurers.
 Robert F. Cusumano, Robert D. Goodman, Daniel J. Spillane, Debevoise & Plimpton, New York, NY, for Defendant-Appellant Travelers Casualty & Surety Co., as successor-in-interest to Aetna Casualty & Surety Co.
 James M. Dennis, Mound, Cotton, Wollan & Greengrass, New York, NY; Michael J. Larin, Lynberg & Watkins, Los Angeles, CA., for Defendant-Appellant Travelers Casualty & Surety Co., as successor-in-interest to American Casualty & Surety Co.
 Thomas S. D'Antonio, Ward Norris Heller & Reidy LLP, Rochester, NY, for Defendant-Appellee Corning Incorporated.
 Before: CARDAMONE, POOLER, and WESLEY, Circuit Judges.
 POOLER, Circuit Judge.
 
 INTRODUCTION
 
 1
 Underlying this appeal are massive asbestos liability claims against appellee Corning, Incorporated ("Corning"), and a company in which Corning owns 50% of the stock, Pittsburgh Corning Corporation ("PCC"). However, the immediate issues are whether a state or federal forum will determine certain insurers' claims that their policies do not cover asbestos claims against Corning and whether we have jurisdiction to review the determination of the United States District Court for the Southern District of New York (Denise L. Cote, Judge) that the claims belong in federal court because they are core to PCC's Pennsylvania bankruptcy proceeding.
 
 
 2
 The appellants in this procedurally complicated appeal are insurers that issued liability coverage to appellee Corning. Because ten of the policies that appellants issued also provided coverage for Corning's affiliates, we refer to the appellants — Continental Casualty Company, American Home Assurance Company, Travelers Casualty & Surety Company, and the London Market Insurers — as the affiliate insurers.[1]
 
 
 3
 The affiliate insurers wish to have their liability to Corning assessed in New York State Supreme Court while Corning prefers a federal forum. As we explain in more detail below, before we can decide whether this declaratory judgment action, commenced in state court, should be tried there, we must thread our way through issues of appellate jurisdiction, abstention, and bankruptcy law. For the moment, we confine ourselves to a brief outline of the procedural history of this appeal and the issues it presents.
 
 
 4
 Corning owned half the stock in PCC. In 2000, asbestos-related liability claims forced PCC into bankruptcy. In 2002, in a New York state court, two of Corning's insurers, Mt. McKinley Insurance Company ("Mt.McKinley") and Everest Reinsurance Company ("Everest"), brought a declaratory judgment action against Corning and all of Corning's excess insurers including appellants. Mt. McKinley and Everest sought a declaration that they owed no liability to Corning for asbestos claims whether those claims stemmed from Corning's activities or from PCC's. Corning removed the lawsuit to the United States District Court for the Southern District of New York and sought transfer to the Western District of Pennsylvania where PCC's bankruptcy proceeding was pending. The insurers, both plaintiffs and defendants, moved for a remand, arguing that mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) applied because they had commenced a lawsuit in state court and their claims against Corning were not core to PCC's bankruptcy proceeding.
 
 
 5
 The district court remanded claims against those insurers whose policies specifically excluded PCC from coverage, but held that because the affiliate insurers' policies could potentially cover PCC, claims against these insurers were core to the Pennsylvania bankruptcy proceeding and abstention was neither required nor appropriate. The court also stayed adjudication of the affiliate claims pending resolution of an adversary action between PCC and the affiliate insurers in Pennsylvania.
 
 
 6
 The affiliate insurers appeal from the district court's order, and Corning moves to dismiss the appeal. Corning principally contends that the district court's order is neither final nor within our collateral order jurisdiction. Because the district court's order finally and conclusively determined the important collateral issue of whether the affiliate policy claims will be adjudicated in state or federal court, we have jurisdiction under the collateral order doctrine. Because resolving Corning's entitlement to coverage from its insurers is not core to PCC's reorganization proceedings, we vacate the district court's order and remand for a determination of whether the issues in this lawsuit can be speedily resolved in state court. See 28 U.S.C. § 1334(c)(2).
 
 BACKGROUND
 
 7
 Corning and PPG Industries, Inc., ("PPG") are equal owners of PCC. Between 1962 and 1972, PCC manufactured and sold Unibestos(R), which contains asbestos. Corning also produced an asbestos-containing product, Corhart. Thousands of individuals allegedly injured by Unibestos(R) have sued both PCC and Corning. Others have sued Corning based on their exposure to Corhart.
 
 
 8
 On April 16, 2000, PCC filed a voluntary Chapter 11 petition in the Bankruptcy Court for the Western District of Pennsylvania. On May 14, 2002, PCC announced a plan of reorganization that included a $2.7 billion trust for asbestos claimants. According to the plan, both PPG and its insurers would contribute to this fund. The plan did not include contributions from Corning's insurers. Nor was Corning a party to the plan or the bankruptcy proceeding.
 
 
 9
 In May 2000, PPG filed an adversary proceeding in bankruptcy court against its insurance carriers, including some of the carriers who are defendants in this lawsuit.
 
 
 10
 On July 3, 2002, Mt. McKinley and Everest, two of Corning's excess carriers, filed a declaratory judgment action in New York County Supreme Court against Corning and all of the insurers that provided commercial general liability coverage for Corning between 1962 and 1985. Mt. McKinley and Everest sought a declaration that they had no obligation to provide coverage for Corning with respect to Unibestos(R) or Corhart.[2] They also sought a declaration of their rights and obligations in relation to the defendants including the affiliate insurers. The aggregate value of the "affiliate policies" issued by the affiliate insurers is $225 million.
 
 
 11
 On July 24, 2002, Corning removed the Mt. McKinley lawsuit from state supreme court. The next day Corning filed an adversary proceeding against the same insurers in the bankruptcy court. Within the adversary proceeding, Corning sought a declaration of its rights in each of the policies. Within the removed proceeding, Corning requested a transfer to the Western District of Pennsylvania, dismissal of all proceedings for failure to join PCC as a necessary party, or a stay of all proceedings. The insurers moved for a remand to state court or abstention, contending that (1) the district court lacked subject matter jurisdiction; (2) the court was required to abstain; (3) the court should exercise its discretion to abstain; and (4) remand was required because Corning's removal procedures were defective.
 
 
 12
 In a March 21, 2003, opinion and order, the district court found that it had subject matter jurisdiction over the affiliate insurers' claims because these proceedings were core to PCC's reorganization in the Western District of Pennsylvania. The claims against and by the affiliate insurers were "core" because:
 
 
 13
 it is undisputed that indemnification insurance is crucial to PCC's ability to reorganize. A determination regarding the availability of the $225 million from the ten Affiliate Policies will be material to that reorganization effort. These Affiliate Policies are equivalent to approximately one-twelfth of the size of the proposed trust announced in May 2002. Comprehensive resolution of the claims at stake in the Corning/PCC insurance program will directly affect the core bankruptcy function of distributing and administering the Debtor's assets.
 
 
 14
 Mt. McKinley Ins. Co. v. Corning, Inc., No. 02-Civ-5835, 2003 WL 1482786, at *5 (S.D.N.Y. Mar.21, 2003).
 
 
 15
 Having found that the claims against the affiliate insurers were core claims, the court held that it was not required to abstain pursuant to 28 U.S.C. § 1334(c)(2), which applies only to non-core matters. Id. at *7. In a ruling that is not contested on appeal, the court also found that neither discretionary abstention nor an equitable remand was appropriate. Id. at * 7-8.
 
 
 16
 Based on its abstention analysis, the court determined that it would exercise jurisdiction over the affiliate insurer claims. Because "[t]he claims in this action that address the Affiliate Policies, ... duplicate[d] an adversary proceeding pending before the [Pennsylvania] bankruptcy court," the court found it unnecessary to transfer the claims to Pennsylvania. Id. at * 8. Instead, it stayed the action "to allow the bankruptcy court to fulfill its obligation to administer PCC's bankruptcy estate efficiently." Id.
 
 
 17
 As to the insurers against whom PCC had made no claim for coverage (the "non-affiliate insurers"), the district court remanded, finding that Corning "ha[d] failed to show that resolution of the declaratory judgment action with respect to the non-Affiliate Policies, which not only fail[ed] to name the Debtor, but in fact specifically exclude[d] the Debtor from coverage, ha[d] a conceivable effect on the Debtor's bankruptcy estate." Id. at *9.
 
 
 18
 On June 16, 2003, the district court denied cross-motions made pursuant to Federal Rule of Civil Procedure 60. See Mt. McKinley Ins. Co. v. Corning, Inc., 02-Civ-5835, 2003 WL 21380493 (S.D.N.Y. June 16, 2003). The affiliate insurers filed a timely notice of appeal from "that portion of th[e] Court's order entered on March 20, 2003, (1) denying, with regard to the ten pre-1974 `Affiliate Policies' issued by said parties ..., the motions ... to remand, or alternatively, to abstain (and remand) under 28 U.S.C. § 1334(c)(2), and (2) staying this action with regard to the `Affiliate Policies.'"
 
 
 19
 In the meantime, the affiliate insurers had moved in the Western District of Pennsylvania for an order withdrawing the district court's reference of the affiliate policy claims to the bankruptcy court. After Judge Cote's decision, the Pennsylvania district court requested additional briefing on the issue preclusive effect of her holding that the affiliate insurer claims were core to the reorganization proceeding. In response, Corning asserted that this determination was issue preclusive because, among other things, the affiliate insurers did not include it in their notice of appeal.
 
 
 20
 On January 7, 2004, Corning moved to dismiss this appeal. The affiliate insurers opposed this motion and sought its consolidation with the appeal. On August 13, 2004, we denied both motions without prejudice to renewal after oral argument. The motion to consolidate was effectively granted at argument and the motion to dismiss is deemed renewed.
 
 DISCUSSION
 
 21
 I. Motion to dismiss.
 
 
 22
 Corning argues that we should dismiss this appeal because the district court's order is not final and does not fall within the collateral order exception to the final order rule. The company further argues that appealing the abstention decision violates 28 U.S.C. § 1452(b), which prohibits appeals of certain decisions to remand or not to remand. Finally, Corning contends that because the affiliate insurers did not state in their notice of appeal that they appealed from the district court's core determination, they cannot raise this issue on appeal.
 
 
 23
 
 A. Collateral order jurisdiction.
 
 
 
 24
 28 U.S.C. § 1291 permits appeals of "final decisions of the district courts." The affiliate insurers concede that the district court's order is not final in the ordinary sense, but contend that it is an appealable collateral order. An appealable collateral order is one that "conclusively determine[s] a disputed question that is completely separate from the merits of the action, effectively unreviewable on appeal from a final judgment, and too important to be denied review." Ouackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal citations, brackets, and quotation marks omitted). Corning questions whether the district court's order is unreviewable on final appeal, whether it is important, and whether it is conclusive.
 
 
 i. ultimate reviewability
 
 
 25
 A decision to abstain falls within the collateral order exception because it surrenders federal jurisdiction to a state court. Id. at 713, 116 S.Ct. 1712. However, under ordinary circumstances, a refusal to abstain would be reviewable on appeal from a final judgment, making the collateral order exception inapplicable. See Beightol v. UBS Painewebber, 354 F.3d 187, 189 (2d Cir.2004); see also In re Rupp & Bowman Co., 109 F.3d 237, 240 (5th Cir.1997) ("Unlike the reverse situation in which the bankruptcy court abstains and is then bound as a matter of res judicata to honor the judgment of the ... state court, thus rendering the abstention decision effectively unreviewable on appeal, the instant case poses no such concerns. Rather, once the bankruptcy court renders a final judgment ..., the [parties aggrieved by the refusal to abstain] will be free to appeal that decision and to challenge the appropriateness of the decision not to abstain.") (internal citation omitted).
 
 
 26
 The affiliate insurers argue, however, that the circumstances in this case are not ordinary. Because the New York district court stayed the affiliate-insurer claims, the insurers contend that the Pennsylvania district court will have the final say on both abstention and the merits of the claims. Thus, there will be no further decision on abstention by the New York district court, which will be obliged to enter judgment in New York in accord with the Pennsylvania judgment. Moreover, the affiliate insurers argue, Corning has attempted to persuade the Pennsylvania district court to accord issue preclusive effect to the New York district court's determination that the affiliate-insurer claims are core proceedings. If Corning is successful, the Pennsylvania district court will not consider the mandatory abstention issue on the merits, and the Third Circuit will examine the district court's determination only to consider whether the court was correct in its issue preclusion holding. The insurers also contend that, even if the Pennsylvania district court does not accord issue preclusive effect to the New York district court's determination, the Pennsylvania court likely will refuse to abstain because the New York district court retained jurisdiction over the affiliate- insurer claims and there is no longer a pending state proceeding to which the cases could be remanded.
 
 
 27
 Corning suggests in response that the abstention issue can be reviewed after final judgment in Pennsylvania. However, Corning has been unable to suggest a scenario pursuant to which this review would occur.
 
 
 28
 We believe that, in the event we were to hold that we lack jurisdiction to consider the affiliate-insurer claims, the Pennsylvania district court almost certainly would view the New York district court's abstention decision as issue preclusive. Coupled with Corning's vigorous attempt to obtain the benefit of issue preclusion in Pennsylvania, the likely success of that attempt persuades us that the order under review is sufficiently final for purposes of the collateral order exception. The Pennsylvania district court will apply the Third Circuit's issue preclusion rules. That court accords issue preclusive effect to a decision from another district court if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." Burlington Northern R.Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (internal quotation marks and brackets omitted).
 
 
 29
 The finality requirement is flexible. See id. at 1233 n. 8. In particular, the Third Circuit does not require that the parallel district court have issued an appealable order. Id. It will grant preclusive effect if it finds that an "action is sufficiently firm to be accorded conclusive effect." Id. (quoting In re Brown, 951 F.2d 564, 569 (3d Cir.1991)). To determine whether the resolution is "sufficiently firm," the district court "should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." Id. In this case, the parties were fully heard and the district court issued a reasoned opinion. In the event that we were to dismiss the affiliate insurers' appeal for lack of appellate jurisdiction, we do not believe that the Pennsylvania district court would deny preclusive effect based solely on the theoretical possibility that we would review the abstention decision on appeal from a final judgment.
 
 
 30
 Moreover, the claim preclusive effect of the Pennsylvania court's judgment would bar further litigation in the Southern District. Therefore, on appeal, we would review only whether the Southern District ultimately made the correct judgment on claim preclusion and not whether it correctly abstained as an initial matter.
 
 
 31
 Given the strong likelihood that the district court's refusal to abstain will receive no further review if we dismiss this interlocutory appeal — and Corning's active attempt to achieve that result — we hold that the district court's order satisfies the Quackenbush non-reviewability standard. As a practical matter, the district court's order would "conclusively determine [ ] which forum will decide the merits of [this] dispute." Minot v. Eckardt-Minot, 13 F.3d 590, 593 (2d Cir.1994). Although Minot and other cases permitting interlocutory review, see, e.g., Quackenbush, 517 U.S. at 710, 116 S.Ct. 1712, involved decisions to abstain and not, as here, a refusal to abstain, this order, like the orders in Quackenbush and Minot, conclusively determines where the affiliate-insurer claims will be litigated.
 
 
 32
 In light of our holding, we have no need to address the affiliate insurers' alternative argument — that even if the Pennsylvania district court refused to grant issue preclusive effect to the Southern District's core jurisdiction conclusion, the latter court's refusal to abstain and to remand to state court would influence the Pennsylvania district court to retain jurisdiction because there would no longer be an action pending in New York in which Corning's claims could be adjudicated in a "timely" manner. See 28 U.S.C. § 1334(c)(2).
 
 
 ii. conclusive determination
 
 
 33
 Although Corning argues that the district court did not make a conclusive determination on abstention, its argument on this point duplicates its argument on reviewability. We reject it for the same reasons that we rejected the reviewability argument.
 
 
 iii. importance
 
 
 34
 Corning also contends that the affiliate insurers failed to establish that the district court's refusal to abstain presents an important issue. We disagree. The Quackenbush Court determined that "the rights asserted on appeal from the District Court's abstention decision are, in our view, sufficiently important to warrant an immediate appeal." 517 U.S. at 714, 116 S.Ct. 1712. In Quackenbush, the important right was the right to stay in federal court. Id. Here it is the right of the affiliate insurers to go back to their original forum, New York Supreme Court. Because the concerns of abstention — comity and federalism — are at least as strong when the district court refuses to abstain as when it abstains, see id., we see no material distinction between a right to stay in federal court and a right to return to state court. We therefore hold that, under the particular facts of this case, the issues presented by the district court's refusal to abstain are sufficiently important to merit an interlocutory appeal pursuant to the collateral order exception.
 
 
 35
 
 B. The remand argument.
 
 
 
 36
 28 U.S.C. § 1452(a) allows a party to remove a pending state proceeding to a district court having bankruptcy jurisdiction. Subsection (b) of that statute allows for remand "on any equitable ground" and further provides that "[a]n order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title."
 
 
 37
 Corning contends that the affiliate insurers essentially attack the district court's refusal to remand to state court, thus subjecting themselves to Section 1452(b)'s appellate bar. Yet Section 1334(d) provides that "[a]ny decision to abstain or not to abstain made under this subsection (other than a decision not to abstain in a proceeding described in subsection (c)(2)) [the mandatory abstention provision] is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title." (emphasis added). While Corning concedes that Section 1334(d) suggests that mandatory abstention decisions are appealable, it argues that the two statutory sections must be read together to prohibit appeal where remand is the relief requested even though the path to that relief is mandatory abstention.
 
 
 38
 We have held that we cannot review a district court's decision to remand even when that decision is based on mandatory abstention. See In re Cathedral of the Incarnation, 90 F.3d 28, 32-34 (2d Cir.1996) (holding that Section 1452(b) prohibits appellate review of a decision to remand based on mandatory abstention). This holding does not imply its inverse, however. In fact, we noted in Cathedral that Congress had recently provided for appellate review of determinations not to exercise mandatory abstention. Id. at 34 ("Congress amended § 1334 to allow appellate review of [mandatory abstention] determinations where the district court has decided `not to abstain.' 28 U.S.C. § 1334(d). The legislative history of the amendment strongly suggests that Congress viewed this change as carving out a narrow exception to a general rule prohibiting appellate review of abstention decisions.").
 
 
 39
 We must, of course, read Section 1334(c)(2) and (d) with Section 1452(b) in a manner that gives effect to both absent a "positive repugnancy" between them. Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). There is no positive repugnancy between Sections 1334(c)(2) and (d) and 1452(b). As Corning concedes, Section 1334(d) contemplates appellate review of decisions refusing to exercise mandatory abstention. Section 1452(b), on the other hand, imposes a broad bar against the review of remand decisions. It is not legally or factually impossible to address the abstention decision without reaching the district court's remand decision. If we determine that because the affiliate-insurer claims are not core proceedings, the district court erred by not abstaining, the district court properly could both abstain and remand when this lawsuit is returned to it. However, that reality would not alter the fact that we would have reviewed only the decision not to abstain. Under the facts of this case, we can give effect to both statutes and need not determine whether, in other circumstances, it might be impossible to do so.
 
 
 C. The Notice of Appeal
 
 
 40
 Corning posits that because appellants did not specifically appeal from the district court's determination that the affiliate-insurer claims were core claims, it cannot make that argument on appeal. The requirement for specificity in a notice of appeal refers to the relief granted or denied. See Kowsh v. Board of Elections, 99 F.3d 78, 80 (2d Cir.1996) (holding that because appellant appealed only from denial of injunctive relief, he could not obtain relief on other claims); Terkildsen v. Waters, 481 F.2d 201, 206 (2d Cir.1973) (stating that the appellant is not required to include "assignments of error," or reasons why the lower court was mistaken in the relief it granted). The affiliate insurers moved for abstention and/or remand and the district court denied that request because, in part, it determined that the affiliate-insurer claims were core claims. Having listed the refusal to remand and abstain in their notice of appeal, the affiliate insurers are free to argue that the district court erred in its abstention decision because the affiliate insurer claims are not core claims. See Terkildsen, 481 F.2d at 206.
 
 
 41
 II. Abstention.
 
 
 42
 Corning argues that the district court's abstention ruling was correct for three reasons: (1) Section 1334(c)(2)'s mandatory abstention provision does not apply to removed actions; (2) the removed action is a core bankruptcy proceeding; and (3) the affiliate insurers did not establish that the claims against them could be resolved on a timely basis in state court.
 
 
 43
 
 A. Mandatory abstention in removed proceedings.
 
 
 Section 1334(c)(2) provides that:
 
 44
 Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.
 
 
 45
 (emphasis added). Corning argues that once it removed this lawsuit to federal court, there no longer was a lawsuit "commenced" in state court. A number of courts have accepted this argument. See, e.g., In re Lazar, 237 F.3d 967, 981-82 (9th Cir.2001); In re Montague Pipeline Techs. Corp., 209 B.R. 295, 303-04 (Bankr.E.D.N.Y.1997); Arstk, Inc. v. Audre Recognition Sys., Inc., 95-Civ-10519, 1996 WL 229883, at *4 (S.D.N.Y. May 7, 1996); Neuman v. Goldberg, 159 B.R. 681, 687-88 (S.D.N.Y.1993); In re Ross, 64 B.R. 829, 834-35 (Bankr.S.D.N.Y.1986); In re 666 Assocs., 57 B.R. 8, 12 (Bankr.S.D.N.Y.1985); see also Renaissance Cosmetics, Inc. v. Development Specialists, Inc., 277 B.R. 5, 12-13 (S.D.N.Y.2002) (suggesting but not holding that mandatory abstention does not apply to removed actions).
 
 
 46
 However, other than the Ninth Circuit, all of the courts of appeals to have addressed this issue hold that mandatory abstention applies to a removed action. See Christo v. Padgett, 223 F.3d 1324, 1331 (11th Cir.2000); In re Southmark Corp., 163 F.3d 925, 929 (5th Cir.1999); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 584 n. 3 (6th Cir.1990). Some district courts in this circuit have reached the same conclusion. See Technology Outsource Solutions, LLC, v. ENI Tech., Inc., 02-CV-6433, 2003 WL 252141, *3 (W.D.N.Y. Jan.23, 2003); Universal Well Servs. v. Avoca Natural Gas Storage, J.M.C., 222 B.R. 26, 31 (W.D.N.Y.1998); Channel Bell Assocs. v. W.R. Grace & Co., 91-Civ-5485, 1992 WL 232085, at *7 (S.D.N.Y. Aug.31, 1992).
 
 
 47
 Those cases holding that mandatory abstention does not apply to removed cases rely on two premises: (1) once removal occurs, there is no longer a "commenced" state proceeding within the meaning of Section 1334(c)(2), see, e.g., Lazar, 237 F.3d at 981-82, and (2) Section 1452(b)'s discussion of procedures for removal and remand does not cross-reference Section 1334(c)(2), suggesting that the abstention section does not apply to removed actions, see, e.g., Ross, 64 B.R. at 834-35.
 
 
 48
 Courts on the other side of the issue emphasize that (1) because Section 1334(c)(2) says "is commenced" and not "is pending," mandatory abstention does not require a pending state law suit; (2) on remand to state court, the proceeding will be reinstated and a speedy adjudication can be had; and (3) providing for mandatory abstention in removal situations "better comports with the plain language of § 1334(c)(2) as well as Congress's intent that mandatory abstention strike a balance between the competing interests of bankruptcy and state courts." Christo, 223 F.3d at 1331; see also Joseph C. Cavender, On the Need to Conduct Abstention Analysis in Bankruptcy-Related Cases Removed to Federal Court, 71 U. CHI. L. REV. 289 (2004). We agree with each of these premises and see no need for an explicit reference in Section 1452(b) to Section 1334(c)(2) or (d); both statutes must be applied to the factual situations that they govern. We therefore reject Corning's argument.
 
 
 49
 
 B. Core Jurisdiction.
 
 
 
 50
 Corning urges that we may review the district court's abstention determination only for abuse of discretion. The insurers seek de novo review. The first step in a Section 1334(c)(2) abstention analysis is resolution of whether the proceeding is "core," an issue that we must review de novo. In re United States Lines, 197 F.3d 631, 636 (2d Cir.1999). If this proceeding is non-core, the district court could refuse to abstain only if the lawsuit could not be timely adjudicated in state court. See 28 U.S.C. § 1334(c)(2). Therefore, we begin with a de novo review of the district court's conclusion that core jurisdiction existed for the affiliate insurer claims.
 
 
 51
 Although we address core jurisdiction in the context of mandatory abstention, the distinction between core and non-core matters has its roots in the differences between the jurisdiction of bankruptcy court, an Article I court, and that of the district court, an Article III court. In 1982, the Supreme Court curtailed Congress's authority to delegate to bankruptcy court matters reserved for Article III courts. See Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality), 89-92, 102 S.Ct. 2858(concurrence). The specific lawsuit found to be beyond the bankruptcy court's jurisdiction was a state-law contract action brought by the debtor. See id. at 84, 90, 102 S.Ct. 2858. The plurality explained that because the debtor's claim was for "a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court," "Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III `adjunct,' plainly must be deemed at a minimum." Id. at 84, 102 S.Ct. 2858.
 
 
 52
 In reaction to Marathon, Congress amended the Bankruptcy Court's jurisdictional provision, 28 U.S.C. § 157. Currently, a district court "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The bankruptcy judge then has plenary jurisdiction over "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Section 157(b)(2) sets out a non-exclusive laundry list of "core proceedings." These proceedings are directly related to a bankruptcy court's central functions, for example, the determination of a counterclaim made by a debtor's estate against a claimant in bankruptcy, and motions to terminate the automatic stay in bankruptcy. See 28 U.S.C. § 157(b)(2)(C) and (G).
 
 
 53
 As to non-core proceedings related to a case under title 11, the bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court, which will finally determine the matter. 28 U.S.C. § 157(c)(1). Non-core, "related-to" proceedings are subject to mandatory abstention if "an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).
 
 
 54
 We have held that "`core proceedings' should be given a broad interpretation that is close to or congruent with constitutional limits as set forth in Marathon, and that Marathon is to be construed narrowly." United States Lines, 197 F.3d at 637 (internal quotation marks omitted). In determining whether a contract dispute such as the one in this lawsuit is core, we look to "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." Id. The nature of the proceeding is also important. "Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." Id. (internal citations omitted).
 
 
 55
 United States Lines addressed a debtor's request for a declaratory judgment establishing that thousands of asbestos-related claims brought against the debtor were within the coverage of the policies issued to the debtor by the insurance-company defendant. Id. at 635. Militating against a finding of core jurisdiction was the fact that the policies were purchased pre-petition. Id. at 637-38. Nevertheless, we found core jurisdiction based on the mutually re-enforcing effects of two factors. First, the policies were the only asset available to pay the asbestos claimants. Id. at 638. Second, the policies were pay-first policies that required the trustee to pay the claims and then seek indemnification. If the debtor paid asbestos claims without knowing whether they were covered under the policy, the estate's assets would not be equitably distributed. Id. at 639. In light of these factors, we reasoned that "in order to effectuate an equitable distribution of the bankruptcy estate, a comprehensive declaratory judgment is required to determine ... whether a chosen payment plan will trigger the indemnification obligation and ... the amounts payable under the insurance contracts." Because "the declaratory proceedings brought by the Trust ... directly affect [ed] the bankruptcy court's core administrative function of asset allocation among creditors," we held that the declaratory judgment action against the debtor's insurers was core to the bankruptcy proceeding. Id.
 
 
 56
 Like United States Lines, this case concerns insurance policies issued before the debtor declared bankruptcy. As in United States Lines, the pre-petition execution of the insurance contracts suggests that this lawsuit is not core to PCC's reorganization. Moreover, unlike United States Lines, the debtor is not involved in this lawsuit, and plaintiffs here seek to adjudicate the rights of non-debtors only. Thus, the adjudication of the claims in this lawsuit will have no direct impact on PCC's bankruptcy proceedings. Other less important distinctions exist as well. For instance, the proceeds of the affiliate policies are not the only or even the major assets available to pay the asbestos claimants: the trust for insurance claimants was funded with $2.7 billion from insurers and PPG while the affiliated policies provide only $225 million in coverage to Corning and PCC.
 
 
 57
 Corning seeks to avoid the import of these distinctions on three bases. First, it argues that the United States Lines holding is not explicitly limited to claims by debtors. Second, it claims that In re Petrie Retail, Inc., 304 F.3d 223 (2d Cir.2002), extended United States Lines to a proceeding involving a non-debtor. Finally, Corning relies on a Southern District decision, In re County Seat Stores, Inc., 2002 WL 141875 (S.D.N.Y. Jan.31, 2002). None of Corning's arguments is persuasive.
 
 
 58
 While it is true that United States Lines does not explicitly limit its holding to insurance policies wholly owned by the debtor or even to the debtor's interest in the insurance policy, that limitation implicitly existed and distinguishes this case. A non-debtor's right to coverage under an insurance policy has a much more attenuated relationship to core bankruptcy functions than does the debtor's interest in the policy. Corning attempts to blur this distinction by arguing that the bankruptcy court will be able to adjudicate the respective interests of Corning and the debtor in the policies. However, the state court suit did not seek an adjudication of the relative interests of Corning and the debtor, PCC. Nor has the debtor sought one. Moreover, Corning does not argue that any judgment in the state court establishing its rights and obligations vis-a-vis the affiliate insurers would bind the bankruptcy court in determining PCC's claims against the same insurers or PCC's claims against Corning. In this procedural posture, although determination of the insurers' claims against Corning may eventually have an effect on the amount of money available to the debtor — because payment of Corning's claims under the affiliate policies will allegedly reduce the debtor's available insurance proceeds — the effect will not be direct. See United States Lines, 197 F.3d at 637 (a proceeding may be core if it "directly affect[s] a core bankruptcy function"). Therefore, United States Lines does not support Corning's contention that the affiliate-insurer claims are core.
 
 
 59
 In Petrie, we held that core jurisdiction existed over a dispute between entities that had been involved in a reorganization proceeding (albeit not as debtors) over interpretation of the bankruptcy court's sale order. 304 F.3d at 229. We held that the dispute "uniquely affected and was uniquely affected by core bankruptcy functions because the dispute between [the two parties] was based on rights established in the sale order, the plan consummation motion sought enforcement of a pre-existing injunction issued in the bankruptcy court's sale order, and the dispute involved an issue already before the bankruptcy court as part of its consideration of [one party's] claim against the estate." Id. at 231. Because Petrie addressed a specific factual situation that demonstrated the dispute's unique effect on a reorganization in bankruptcy court and because none of the factors Petrie emphasized is present in this case, Petrie is not relevant.
 
 
 60
 County Seat Stores is also inapposite. In that case, the trustee of a bankrupt corporation brought an adversary proceeding against certain of the corporation's former directors and officers. 2002 WL 141875, at *1. When the insurer that had provided director and officer coverage to the debtor corporation disclaimed under its "Insured v. Insured" exclusion, the trustee sued the insurance company. Id. at *2. Even though the debtor was attempting to determine the coverage of non-parties to the reorganization proceeding (the directors and officers), the court found that core jurisdiction existed because "resolution of [the] dispute will determine whether the debtor will be subject to the indemnification claims of the Directors and Officers, potentially reducing the estate for other creditors, or whether the insurance proceeds will fund such indemnification expenses." Id. at *6. The district court further noted that the insurance proceeds might be "the most important asset of the estate" and that it would be "difficult for the Trustee to decide questions relating to the distribution of assets among creditors without a decision in the Coverage Action." Id. Thus, County Seat Stores involved an insurance policy owned by the debtor that (1) provided the only source of potential payment for tort claims and (2) might have been the most important estate asset. As we have discussed previously, these factors are not present here. Therefore, assuming without deciding that County Seat Stores was correctly decided, it does not dissuade us from our conclusion that the affiliate insurer claims are non-core.
 
 
 61
 Based on the pre-petition nature of the insurance policies, plaintiffs' attempt to adjudicate the rights of non-debtors only, and the tangential and speculative effect that resolution of the affiliate insurer claims would have on the bankruptcy proceeding in Pennsylvania, we conclude that these claims are not core to the bankruptcy proceeding.
 
 
 62
 
 C. Timely adjudication in the state courts.
 
 
 
 63
 As a condition for mandatory abstention, Section 1334(c)(2) requires that the matter at issue "can be timely adjudicated, in a State forum of appropriate jurisdiction." Corning argues that the affiliate insurers failed to establish that this condition was satisfied. Having found that the affiliate-insurer claims were core, the district court had no need to and did not reach the timely adjudication issue. We therefore remand to allow it to do so.
 
 CONCLUSION
 
 64
 For the reasons we have discussed, we deny Corning's motion to dismiss, vacate the district court's judgment, and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The London Market Insurers include Certain Underwriters of Lloyd's, London
 
 
 [2]
 The defenses advanced by Mt. McKinley and Everest, which included lack of timely notice and various policy exclusions, are not relevant to the issues we address