Ruth **NAVON**, Plaintiff,

v.

**MARICULTURE PRODUCTS LIMITED**, Defendant.

**Civil No. 3:08cv628 (JBA).**

United States District Court, D. Connecticut.

Oct. 29, 2008.

Ilan Markus, Kimya P. Bush, Michael J. Pendell, Tyler, Cooper & Alcorn, LLP, New Haven, CT, for Plaintiff.

Elizabeth J. Austin, Jessica Grossarth, Pullman & Comley, Bridgeport, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION TO REFER AND PLAINTIFF'S MOTION TO REMAND OR ABSTAIN

JANET BOND ARTERTON, District Judge.

Plaintiff Ruth Navon is claiming damages under state law based on a promissory note issued by Mariculture Products Ltd. ("MPL") in the early 1990s. MPL and Mariculture Products Corp. ("MPC") were together part of a business venture by Gershon Navon, Ruth's husband. Gershon's estate is now the subject of an involuntary Chapter 7 bankruptcy proceeding, in which Richard Belford is the trustee. Before the Court are: (1) a motion to refer the case to the bankruptcy court filed by Belford on behalf of MPL, and (2) a motion to remand or abstain filed by Ruth Navon. The Court heard oral argument on these motions on October 24, 2008.

## I. Factual Background

The relevant facts are as follows. Formed in 1987, MPL was a Maine-based fish-farming business. Gershon Navon was the sole shareholder of MPC, which in turn owned 100% of MPL. This venture was financed in part by Key Bank in Augusta, Maine, and insured by Lloyd's of London. In August 1991, Hurricane Bob destroyed MPL's operations and caused the eventual ruin of the business. In 1994, Frank Simon, a creditor and former business partner, won a $1.6 million judgment against Gershon in Maine federal court, which the First Circuit affirmed in part. *Simon v. Navon,* 71 F.3d 9, 20 (1st Cir. 1995).

Simon thereafter tried to collect on this judgment, and in 2001 he filed an involuntary Chapter 7 action against Gershon in the Bankruptcy Court for the District of Connecticut pursuant to 11 U.S.C. § 303. Gershon defended against this petition on the ground that he had no interest in property in the United States as of the petition date, as required by 11 U.S.C. § 109(a). After a hearing, Chief Bankruptcy Judge Schiff found that Gershon's holdings in MPC, which as of 1992 were valued at about $3 million, satisfied the requirement that he hold property in the United States. *In re Navon,* 283 B.R. 367, 369 (Bankr.D.Conn.2002). This conclusion was based on unrefuted testimony—by Simon and a Key Bank loan officer—that Gershon listed the $3 million in MPC stock "on his personal financial statement" provided to the bank in connection with the loan, and also that Gershon "considered MPC and MPL to be the same company." *Id.* at 368. Although he was represented by counsel and was designated as a witness, Gershon did not appear to testify at this hearing. *Id.* at 369. On appeal to the

district court, Judge Droney affirmed. *In re Navon,* 364 B.R. 850, 854 (D.Conn.2007).

In 2003, Belford initiated two adversary proceedings relating to the bankruptcy estate's interest in a judgment obtained by MPL against Lloyd's of London in Connecticut state court. The first was a request for declaratory relief in response to Ruth Navon's claims of ownership in MPC stock. In the second action, Belford alleged that Gershon, Ruth, MPL, and MPC had engaged in fraudulent conveyances of stock, assets, and real property. Belford specifically challenged, among other things, a promissory note in the amount of $1.47 million issued from MPL to Ruth. Chief Judge Schiff consolidated these actions for trial and on January 15, 2008 issued an oral ruling that he lacked jurisdiction to disturb the previous finding that the MPC stock was owned by Gershon and was thus properly part of the involuntary bankruptcy.

Turning now to this case, on April 22, 2008, Ruth Navon filed a complaint against MPL in state superior court alleging breach of contract and unjust enrichment arising out of the $1.47 million promissory note issued to her from MPL.[1] Asserting control of MPC and MPL in his capacity as the trustee of Gershon's estate, Belford then timely removed the case pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) and Federal Rule of Bankruptcy Procedure 9027(a). According to MPL, removal is proper because the "[a]ction 'arises under' title 11 or 'arises in' a case under title 11 or is 'related to' a case under title 11," and thus is either a "core" or "related to" bankruptcy proceeding. (Not. Removal [Doc. # 1] at 4–6.) Following removal, MPL moved to refer the case to the bankruptcy court on the same grounds (Def.'s

---

1. Since the motions in this case were filed, Ruth filed a proof of claim in the Chapter 7 bankruptcy case based on the same $1.47 million loan.

Mot. Refer [Doc. # 6] at 4–5), to which Ruth objects (Pl.'s Obj. Mot. Refer [Doc. # 16]). Ruth has also moved to remand the case to state court, claiming that this Court lacks subject-matter jurisdiction and that, even if this Court has jurisdiction, it should nevertheless abstain from adjudicating the action pursuant to 28 U.S.C. § 1334(c). (Pl.'s Mot. Remand [Doc. # 14] at 1.)

## II. MPL's Motion to Refer to the Bankruptcy Court

By an order dated September 21, 1984, the judges of this District directed, pursuant to 28 U.S.C. § 157(a), that "all cases under Title 11" and "all proceedings arising under Title 11 ... or arising in or related to a case under Title 11" shall be referred to the bankruptcy court. General Order of Reference (Sept. 21, 1984); *Michaelesco v. Shefts*, 303 B.R. 249, 251 (D.Conn.2004) (explaining that the order authorizes referral of "core" and "non-core" bankruptcy proceedings). Core bankruptcy proceedings—examples of which are listed in § 157(b)(2)—are those which "directly relate[ ] to a bankruptcy court's central functions." *Mt. McKinley Ins. Co. v. Corning, Inc.*, 399 F.3d 436, 448 (2d Cir.2005). Disputes which "are bound to have a significant impact on the administration of the estate" fall within the class of core proceedings. *United States Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indem. Assoc., Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 638 (2d Cir. 1999) (finding claims based on pre-petition insurance contracts, potentially the estate's "most important asset," to be core). The non-core but "related to" bankruptcy jurisdiction goes further and includes "more than simple proceedings involving the property of the debtor or the estate," so that bankruptcy courts can " 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate.' "

*Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). By the standard formulation, a proceeding "falls within the 'related to' jurisdiction of the bankruptcy court" if "its outcome might have any 'conceivable effect' on the bankrupt estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir.1992) (following *Pacor*).

Ruth Navon contends that this action is neither a core nor a "related to" proceeding because (1) her claims are based in state, not federal, law; (2) the case pits "a non-debtor party (Mrs. Navon) against a non-debtor party (MPL)"; and (3) the claims "involve actions taken long before the bankruptcy filing." (Pl.'s Obj. Mot. Refer at 7.) "[T]he sole controversy" in this case, Plaintiff argues, "is the unpaid debt owed to Ruth Navon, evidenced by a promissory note." (Pl.'s Surreply Mot. Refer [Doc. # 20] at 3.) Confirming its basis for removal, MPL disagrees with this characterization of the claims and maintains that Ruth's claims are "intricately intertwined with the Bankruptcy Case and its related litigation and, as such, [the case] is core, or at a minimum, 'related to' the Bankruptcy Case." (Def.'s Reply Mot. Refer [Doc. # 18] at 11.)

During oral argument, the parties reached some common ground on the underlying facts. Counsel for Ruth Navon agreed that (1) based on the earlier rulings by Chief Judge Schiff in the bankruptcy court, Belford has ownership and control of MPC and MPL in his capacity as trustee of the Gershon Navon estate; (2) the Lloyd's of London judgment held by MPL, after being affirmed in part by the Connecticut Appellate Court, is now the main (if not the only) asset of the bankrupt estate; and (3) if Ruth prevails

in this action, MPL's repayment of the note would have to come out of the Lloyd's judgment, thus diminishing the value of the estate. But although acknowledging this "practical effect," counsel disagreed that this chain of events qualifies as a "conceivable effect" on the estate as required for "related to" jurisdiction. Plaintiff grounded this argument in the view expressed by cases including *Tower Automotive Mexico v. Grupo Proeza, S.A. (In re Tower Automotive, Inc.),* 356 B.R. 598, 600–01 (Bankr.S.D.N.Y. 2006), that bankruptcy jurisdiction does not extend to disputes over the diminution in value of the estate's stock holdings in a wholly owned subsidiary. *See also Feldman v. Beck Indus., Inc. (In re Beck Indus., Inc.),* 479 F.2d 410, 416 (2d Cir.1973) (finding no bankruptcy jurisdiction over a dispute involving a debtor's subsidiary because the "mere financial interest of a bankrupt estate in the outcome of the litigation pending in state courts does not authorize the issuance of an injunction against such prosecution"). That rule does not apply to proceedings involving subsidiaries which are "alter ego[s]" of the debtor, however, which is an exception seemingly applicable here in light of the earlier findings by the bankruptcy court about the relationship between Gershon Navon, MPC, and MPL. Furthermore, *Tower Automotive* is distinguishable based on clear differences in the proceedings there and here: while Belford has control over both MPC and MPL, the *Tower Automotive* court was concerned with the subsidiary's ability "to continue in business free of the burdens of the Bankruptcy Code, to pay its separate creditors[,] and to maintain its business relationships without bankruptcy entanglement," which supported the conclusion that the "proceeding at bar does not alter [the subsidiary's] rights, liabilities, options or freedom of action, and it does not impact the handling and administration of the bankruptcy estate over which this Court has jurisdiction." 356 B.R. at 602–03.

Fundamentally, Ruth's argument that this action is not at minimum "related to" her husband's bankruptcy case is doomed by the reality that the trustee's ability to satisfy debts to creditors will depend on whether Ruth prevails on her claims involving the promissory note. Thus, her "claims affect one of the most elemental of all core bankruptcy functions: determining if a creditor may collect from a debtor's estate." *Bankruptcy Servs., Inc. v. Ernst & Young (In re CBI Holding, Co.),* 529 F.3d 432, 461 (2d Cir.2008); *see also* 28 U.S.C. § 157(b)(2)(A) ("Core proceedings include ... matters concerning the administration of the estate"). At the very least, the proceeding is within the bankruptcy court's "related to" jurisdiction because its outcome may have a "conceivable effect" on or "significant connection" with the estate, thus "bring[ing] into question the very distribution of the estate's property." *In re Cuyahoga,* 980 F.2d at 114; *see Celotex,* 514 U.S. at 308 n. 5, 115 S.Ct. 1493 ("Proceedings 'related to' the bankruptcy include ... suits between third parties which have an effect on the bankruptcy estate."). There is ample justification for finding that this action falls within the terms of 28 U.S.C. §§ 157(a) and 1334(b), and therefore it should be referred to the bankruptcy court in accordance with the 1984 General Order of Reference.

## III.  Plaintiff's Motion to Abstain

■ The remaining issue is Ruth Navon's motion, in the alternative, for the Court to abstain according to 28 U.S.C. § 1334(c). Section 1334(c) provides for either mandatory or discretionary abstention from hearing state-law claims related to bankruptcy proceedings. *Mt. McKinley,* 399 F.3d at 446–47. Bankruptcy Rule

5011 governs the procedure for abstention, the notes to which emphasize that because "[t]he bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention," "the initial hearing on the motion [should be] before the bankruptcy judge." Fed. R. Bankr.P. 5011 advisory committee's note. This rationale is particularly apt here, owing to the bankruptcy court's much more extensive familiarity with the issues underlying this dispute. Thus, it should be within the bankruptcy court's province to rule on whether abstention is appropriate, depending on whether this action is a core or "related to" proceeding, and so the Court denies Plaintiff's motion to abstain without prejudice to renew following referral.

## IV. Conclusion

Accordingly, Defendant's Motion to Refer to the Bankruptcy Court [Doc. # 6] is granted. Plaintiff's Motion to Remand [Doc. # 14] is denied. The Clerk is directed to refer this case to the United States Bankruptcy Court for the District of Connecticut.

IT IS SO ORDERED.